[Cite as *Donlon v. Lineback*, 2016-Ohio-7739.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| PAMELA DONLON f.k.a. LINEBACK, | : | |
| | | CASE NOS. CA2016-03-015 |
| Plaintiff-Appellant/Cross-Appellee, | : | CA2016-03-016 |
| | : | O P I N I O N |
| - vs - | | 11/14/2016 |
| | : | |
| CHARLES LINEBACK, | : | |
| Defendant-Appellee/Cross-Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 12 DR 35381

Barbara J. Howard, 120 East Fourth Street, Suite 960, Cincinnati, Ohio 45202, for appellant/cross-appellee

Charles Lineback, 4000 Alan Shepard Street, #201, Sacramento, CA 95834, appellee/cross-appellant, pro se

**PIPER, J.**

{¶ 1} Plaintiff-appellant/cross-appellee, Pamela Donlon ("Wife"), appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, denying her request to modify spousal support. Defendant-appellee/cross-appellant, Charles Lineback ("Husband"), appeals the same trial court's decision finding him in contempt and awarding fees.

{¶ 2}  Husband and Wife were divorced in 2013.  As part of the divorce decree, the trial court ordered Husband to divide shares of stock he held in four companies and give Wife her share.  Husband was also awarded a share of Wife's retirement, and Wife was ordered to pay Husband $1,230 per month in spousal support.  At the time of the divorce decree, Wife's income from investment interest and dividends was $36,948 a year.

{¶ 3}  Wife's investments were funded from an inheritance she received.  The bulk of Wife's investments were held as certificates of deposit, which garnered interest rates as much as five percent.  However, once the certificates of deposits matured, Wife was unable to find certificates of deposit that generated similar interest income.  In 2014, Wife's interest income was less than $14,000 and she received no dividend income.  Thus, Wife moved the trial court to modify her spousal support, and the matter was heard by a magistrate.  During the hearing, Wife presented information specific to how her funds were invested, including money market accounts, as well as a Vanguard account comprised of bonds.

{¶ 4}  At the same time, Husband and Wife also filed competing motions for contempt, arguing that each other failed to comport with the trial court's divorce decree.  Husband argued that Wife failed to execute a division of property order specific to the amount of Wife's retirement benefits awarded him in the divorce decree.  However, Husband later withdrew his motion for contempt.  Wife's motion for contempt alleged that Husband failed to comply with the decree by not dividing the stocks as ordered.

{¶ 5}  The magistrate issued a decision denying Wife's motion to modify spousal support, but found Husband in contempt and ordered him to pay Wife fees she incurred because of Husband's contempt.  The parties objected to the magistrate's decision, and the trial court overruled the objections, adopting the magistrate's decision.  Husband, acting pro se, and Wife now appeal the trial court's decision, raising the following assignment and cross-assignments of error.

**{¶ 6}** Wife's Assignment of Error:

**{¶ 7}** THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO FIND SUFFICIENT EVIDENCE OF A CHANGE IN CIRCUMSTANCES TO WARRANT A MODIFICATION [OF] WIFE'S SPOUSAL SUPPORT OBLIGATION.

**{¶ 8}** Wife argues in her assignment of error that the trial court erred in denying her motion to modify spousal support.

**{¶ 9}** A trial court has broad discretion in determining a spousal support award, including whether or not to modify an existing award. *Burns v. Burns*, 12th Dist. Warren No. CA2011-05-050, 2012-Ohio-2850, ¶ 17. Thus, a spousal support award will not be disturbed on appeal absent an abuse of discretion. *Id.* An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶ 10}** In exercising its discretion to modify a spousal support award, the trial court must determine that the divorce decree contained a provision specifically authorizing the court to modify the spousal support, and that the circumstances of either party have changed. *Strain v. Strain*, 12th Dist. Warren No. CA2005-01-008, 2005-Ohio-6035, ¶ 11; R.C. 3105.18(E). The change in circumstances must be substantial so that the existing award is no longer reasonable and appropriate, and the change in circumstances cannot have been contemplated at the time of the divorce decree. *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, ¶ 31-32; R.C. 3105.18(F). "The word 'substantial' has been given various meanings by Ohio courts, such as 'drastic,' 'material,' and 'significant.'" (Citations omitted.) *Mandelbaum* at ¶ 32. The party seeking to modify a spousal support obligation bears the burden of showing that the modification is warranted. *Hill v. Hill*, 12th Dist. Clermont Nos. CA2004-08-066 and CA2004-09-069, 2005-Ohio-5370, ¶ 5.

**{¶ 11}** The record is clear that the trial court retained jurisdiction to modify the support

order.  In order to demonstrate that her circumstances had substantially changed, Wife presented evidence that her investment income had declined sharply from the time of the original divorce decree.  Wife testified that as her certificates of deposits matured, she was unable to find new or like investments that produced similar interest income.  The evidence demonstrated that Wife's investment income declined significantly since the time of the divorce decree, from $36,948 to less than $14,000 at the time of her motion to modify.

{¶ 12}  Wife also testified that she has consistently maintained the same investment strategy from the time she inherited the funds.  Wife has never invested her inheritance in stocks, and instead, has historically utilized conservative investment methods, such as certificates of deposit.  Wife also testified that she had no way of knowing that her investment income would so drastically decline given that the overall economic downturn was unforeseen.

{¶ 13}  Despite this evidence, the magistrate found that Wife failed to prove that a change in circumstances had occurred.  The magistrate noted, "there is no question [Wife's] investment income is now less than it was before."  The magistrate did not discount the economic downturn, but instead, stated, "curiously, with all the expertise offered as evidence, there was no testimony from a financial planner to the effect that [Wife's] holdings must remain as stagnant as they are, with no potential for growth."[1]  The magistrate further determined, "absent expert evidence to the contrary, the Magistrate will impute an investment income to her that is the same as what had been in existence before."

{¶ 14}  In overruling Wife's objection to the magistrate's decision, the trial court

---

1. During Husband's cross-examination of Wife, the magistrate suggested that the parties agree to the following stipulation: "perhaps there would have been somebody out there in the financial world who could have given advice about a more uh potentially financially profitable method of investing the money, but if that would have carried a risk that was beyond her comfort level * * * she's not the type to do that."  Despite this recognition, the magistrate was nonetheless expecting Wife to present expert testimony regarding other and more lucrative investments.

determined, "the Court agrees with the Magistrate regarding Wife's failure to present any testimony about why Wife's investment income is so much lower than before." Despite Wife's testimony, the trial court suggested that Wife failed to present "any testimony" regarding the decrease in her interest income. The court simultaneously recognized that Wife testified that she could no longer procure higher interest rates given the downturn in the economy that began in 2008. The court then expressly recognized that it was "cognizant of the general effects that the economy's decline in 2008 had on interest rates." With clear evidence that conservative investment rates had dramatically declined, and with no evidence suggesting Wife was voluntarily attempting to decrease the return on her inheritance, we find the trial court abused its discretion in imputing income to Wife.

{¶ 15} The record is undisputed that Wife had a history of investing conservatively in certificates of deposit that had high-yield interest rates. As such, Wife's income from these investments was much higher in the past. However, and equally undisputed, the economic downturn that began around 2008 impacted Wife's investments in that she was no longer able to procure higher interest rates for her investments. The magistrate, as well as the trial court, recognized that such economic downturn did occur, and that the economy's decline effected interest rates.

{¶ 16} Neither the trial court nor the magistrate found that Wife's testimony lacked credibility. Instead, the trial court ultimately determined that Wife needed to present testimony "by a financial planner regarding the changes in interest rates, and the type of income that Wife could be generating at a risk level she is comfortable with."[2] The trial court determined that Wife's failure to "do such," resulted in her failing to carry her burden of proof.

---

2. Wife testified that when she met with a Vanguard advisor to begin investing the money that had formerly been in certificates of deposit, she completed a survey that asked her questions about her comfort level before recommending where she should invest her money. There is no indication in the record that the magistrate doubted the credibility of Wife's testimony that she invested her money in the Vanguard account after working with an advisor on the best way to invest given Wife's comfort level and financial strategy.

{¶ 17} Pursuant to Evid.R. 701 and 702, lay witnesses can testify to their own perceptions, while expert testimony is used when the issue relates to matters beyond the knowledge or experience of lay persons or to dispel a common misconception among lay persons. Such was not the case here, and expert testimony was not necessary to carry Wife's burden of proof.

{¶ 18} Again, neither the magistrate nor trial court found that Wife's testimony on the issues lacked credibility. Nor did the magistrate or trial court question Wife's credibility when she testified that she was unable to find investment opportunities with similar risk and similar interest rates. The issues addressed in the hearing were not beyond the knowledge or experience of lay persons, especially where Wife testified that she had a history of investing in the same manner, that she explored potential possibilities and had consulted with financial professionals, and that she desired to continue investing in a conservative manner.

{¶ 19} There was no need to present expert testimony to demonstrate that Wife's investment income decreased once she no longer received interest payments from the high-yield interest rates. The magistrate and trial court both acknowledged that the income possibilities were different than they were before 2008 given the economic downturn, thus indicating that these matters were within common knowledge.

{¶ 20} Wife presented testimony that she invested based upon her level of comfort, and that such history of investment was conservative. Thus, there was no need to call an expert to explain what risk level Wife is comfortable with when Wife clearly testified that she is comfortable with using certificates of deposit and the like.[3] Nor did a financial planner need to testify since Wife submitted evidence, including statements and tax documentation,

---

3. Also during Husband's cross-examination of Wife, the magistrate stated, "but she is risk adverse and so therefore she does not have a very aggressive portfolio that pays her a lot of money on that." This point never seemed in dispute according to the magistrate.

that the current rates for the same investment strategy she had always used were much lower. The purpose of the hearing was to determine whether Wife could present evidence that she had incurred a change of circumstances, not whether Wife consulted a proper number of financial planners to ensure a certain level of interest income.

{¶ 21} After reviewing the record, we find that the trial court abused its discretion by imputing income to Wife and determining that Wife failed to sufficiently prove a substantial change in circumstances because she presented no expert testimony. As such, Wife's first assignment of error is sustained and this matter is hereby remanded to the trial court to determine the proper amount of spousal support in light of the evidence previously submitted.

{¶ 22} We will now address Husband's four cross-assignments of error.

{¶ 23} Cross-assignment of Error No. 1:

{¶ 24} THE TRIAL COURT ERRED BY FAILING TO PROVIDE A DETERMINATION OF FINDING [SIC] OF FACTS AND CONCLUSIONS OF LAW.

{¶ 25} Husband argues in his first cross-assignment of error that the trial court erred in failing to provide findings of fact and conclusions of law.

{¶ 26} According to Civ.R. 53(D)(3)(ii), a magistrate's decision may be general unless a party requests findings of fact and conclusions of law. Findings of fact and conclusions of law aid in the prosecution of an appeal and provide for effective appellate review. *Katko v. Bauer*, 12th Dist. Clermont No. CA2001-10-082, 2002-Ohio-4127, ¶ 14.

{¶ 27} Husband argues that the magistrate's entry did not contain findings of fact or conclusions of law. Husband included his request for findings and conclusions in his written closing arguments to the 2015 hearing on Wife's motion to modify support. Within the magistrate's entry to which closing arguments applied, the magistrate set forth the legal standard by which it determined the issues, and also set forth findings of fact, thus abiding by Husband's request.

- 7 -

**{¶ 28}** While it is a better practice, and our preference, that findings of fact and conclusions of law be identified separately, they need not be. *See Ramun v. Ramun*, 7th Dist. Mahoning App. No. 05 MA 44, 2005-Ohio-6921, ¶ 19 (finding magistrate's opinion contained findings of fact and conclusions of law despite the sections not being labeled or identified as such). The magistrate's decision, as well as the trial court's decision denying Husband's objections, set forth the legal and factual basis for the decisions reached. This court is able to effectively review the issues raised on appeal by both Husband and Wife, so that the findings and conclusion are adequate. Husband's first cross-assignment of error is overruled.

**{¶ 29}** Cross-assignment of Error No. 2:

**{¶ 30}** THE TRIAL COURT ERRED BY ADMITTING POWER POINT PRESENTATIONS AND OTHER EXHIBITS EX-21, EX-22 AND EX-23 UNDER BEST EVIDENCE RULE.

**{¶ 31}** Husband argues in his second cross-assignment of error that the trial court erred in admitting certain exhibits during the hearing.

**{¶ 32}** The admission or exclusion of relevant evidence rests within the discretion of the trial court. *Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 17. An appellate court will not disturb a decision of the trial court to admit or exclude evidence absent a clear and prejudicial abuse of discretion. *League v. Collins*, 12th Dist. Butler No. CA2013-03-041, 2013-Ohio-3857, ¶ 8.

**{¶ 33}** Evid.R. 1002 provides that "[t]o prove the content of a writing, * * * the original writing * * * is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio." Evid.R. 1003 provides exceptions to the requirement of producing original documents: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the

authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." The Staff Notes to Evid.R. 1003 indicate that a duplicate is the equivalent of an original, and hence, is the best evidence. The party opposing the introduction of the duplicate as the best evidence has the burden of proving that there is a genuine question as to the authenticity of the original or that it would be unfair to admit the duplicates. *Marder v. Marder*, 12th Dist. Clermont No. CA2007-06-069, 2008-Ohio-2500, ¶ 50.

{¶ 34} Husband argues that the trial court improperly allowed evidence at the hearing, but does not explain why the evidence was improperly admitted other than his belief that the authenticity or origin of the supporting documentation was not established. However, during the hearing, Wife submitted her exhibits for admission, and Husband's apparent objection was that the information contained in the charts was not supported by the underlying documents.[4] Yet, at no time did Husband argue that the documentation or exhibits were not accurate copies of the original documents. Nor does Husband allege that it would be unfair to admit any duplicates used in lieu of the original. Husband has thus not carried his burden in proving a violation of the best evidence rule, and his second cross-assignment of error is overruled.

{¶ 35} Cross-assignment of Error No. 3:

{¶ 36} THE TRIAL COURT ERRED BY HOLDING DEFENDANT/APPELLANT (HUSBAND) IN CONTEMPT OF COURT, OHIO REVISED CODE § 2705.

---

4. During the hearing, the magistrate allowed Husband to offer his objections to the exhibits. Husband raised the best evidence rule, and recognized that a party may use duplicates unless there has been a "genuine issue." Husband then stated his belief that "I think the tenor has been there are genuine issues." However, Husband did not identify what the genuine issue was, or offer any specifics. That being the case, the magistrate attempted to help Husband frame his objection, and asked "you object to that so long as it does not have any supporting documentation to it." Husband responded "yes." However, the record indicates that the summary information contained in the exhibits did have supporting documentation.

{¶ 37} Husband argues in his third assignment of error that the trial court erred in finding him in contempt.

{¶ 38} For the first time on appeal, Husband argued that he did not receive service of the contempt motion. However, the parties litigated the motions without Husband ever raising lack of service, in a motion or otherwise, and has thus waived his insufficient service argument. *Gliozzo v. Univ. Urologists of Cleveland, Inc.*, 114 Ohio St.3d 141, 2007-Ohio-3762, ¶ 13.

{¶ 39} Husband also argues that the contempt finding was erroneous. "Disobedience to court orders may be punished by contempt." *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 11. To support a contempt finding, the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order. *Hetterick v. Hetterick*, 12th Dist. Brown No. CA2012-02-002, 2013-Ohio-15, ¶ 35. In reviewing a trial court's finding of contempt, an appellate court will not reverse such a finding absent an abuse of discretion. *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, and CA2010-11-301, 2012-Ohio-1680, ¶ 73.

{¶ 40} According to the terms of the divorce decree, the parties were to equally divide stock in four companies. Husband had knowledge of this valid court order, but did not comply by splitting the stock as ordered. Instead, Husband surreptitiously sold and repurchased the stock, and did not answer Wife's requests for an explanation regarding the stock. As a result of Husband's lack of communication, Wife had to issue several subpoenas in an attempt to ascertain the existence and status of the stocks. One such subpoena was issued at a cost of $1,633. Wife also had to pay attorney fees in pursuit of the issue. As such, the trial court found Husband in contempt for failing to abide by the order to split the stocks and also ordered Husband to pay Wife $3,600 for her expenses related to Husband's

contempt. As Husband's contempt was established by clear and convincing evidence, the trial court did not abuse its discretion in finding Husband in contempt or ordering him to pay Wife her associated fees. Husband's third cross-assignment of error is therefore overruled.

{¶ 41} Cross-assignment of Error No. 4:

{¶ 42} THE TRIAL COURT ERRED BY QUASHING SUBPOENAS AGAINST ATTORNEYS HOLDING MATERIAL ASSETS UNDER QUESTIONABLE CIRCUMSTANCES.

{¶ 43} Husband argues in his final cross-assignment of error that the trial court erred in quashing his subpoenas.

{¶ 44} Husband attempted to issue two subpoenas, one to his former attorney, and one to Wife's attorney. Both attorneys filed motions to quash the subpoenas, and the magistrate granted the motions to quash. Husband filed objections to the magistrate's decision, which the trial court overruled. A trial court's decision on a motion to quash a subpoena generally is reviewed for an abuse of discretion. *Battelle Mem. Inst. v. Big Darby Creek Shooting Range*, 192 Ohio App.3d 287, 2011-Ohio-793, ¶ 38 (12th Dist.).

{¶ 45} The record indicates that Husband wanted to question both attorneys regarding a phone call they shared in relation to Wife sending Husband's attorney property division funds to hold in escrow until further decision of the court allowed the release of funds. Husband essentially argued that his former attorney was wrongly holding the funds, and that he wanted to question both his former attorney and Wife's attorney about why the funds had not yet been released to him.

{¶ 46} However, and as recognized by the trial court, the issues before the court were specific to spousal support modification, as well as Wife's contempt motion regarding the stock division. Husband's claim that his former attorney was wrongly holding funds should have been pursued via a motion with the court for release of funds, not through a subpoena.

As such, we find no abuse of discretion in the trial court's determination that the subpoenas were "not the proper vehicle for the issues at hand." Husband's final cross-assignment of error is therefore overruled.

{¶ 47} Judgment affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this Opinion.

M. POWELL, P.J., and S. POWELL, J., concur.