[Cite as *Langendorfer v. Gastrich*, 2018-Ohio-4656.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


KELLY LANGENDORFER, et al.,               :

    Plaintiffs-Appellants,               :          CASE NO. CA2018-05-032

    - vs -               :          O P I N I O N
                                   11/19/2018
                                        :

SHANE GASTRICH,               :

    Defendant-Appellee.               :


CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2017CVH00823


Cors & Bassett LLC, Michael L. Gay, 201 East Fifth Street, Suite 900, Cincinnati, Ohio 45202, for plaintiffs-appellants, Kelly and Anthony Langendorfer

John M. Williams, 8280 Montgomery Road, Suite 110, Cincinnati, Ohio 45236, for defendant-appellee


**RINGLAND, J.**

{¶ 1}   Plaintiff-appellant, Kelly Langendorfer, appeals the decision of the Clermont County Court of Common Pleas, denying her motion for directed verdict. For the reasons detailed below, we affirm.[1]

---

1. Pursuant to Loc.R. 6(A). the court hereby sua sponte removes this case from the accelerated calendar for purposes of issuing this opinion.

{¶ 2} On July 8, 2015, Langendorfer was involved in an automobile accident in the parking lot of a convenience store. Shane Gastrich was the driver of the other vehicle involved in the accident. Subsequent to the accident, Langendorfer was treated by two physicians, Dr. Reilly, a chiropractor, and Dr. Valentin, an orthopedist.

{¶ 3} On July 5, 2017, Langendorfer filed this action for personal injury damages against Gastrich. Gastrich did not contest liability but disputed the economic and non-economic damages claimed by Langendorfer. The parties stipulated the amount of medical bills incurred at $13,211.70. However, the stipulation did not address whether all of the medical bills were proximately related to the accident.

{¶ 4} The matter was tried to a jury. During trial, Langendorfer testified as to the accident and her injuries. Langendorfer also presented the testimony of her chiropractor, Dr. Reilly, who she had treated with for approximately six months. Dr. Reilly testified that there was a causal connection between the injuries he treated and the accident in the parking lot based on Langendorfer's prior lack of pain, exam findings, and his consultation. However, Dr. Reilly also noted:

> Q. Okay. Now, I noticed that she was with you for about six months?
>
> A. Yes.
>
> Q. How did she – how was she doing at the end of six months?
>
> A. Well, normal – our normal, I mean average, just kind of like a typical auto accident injury would be, you know, 15 to 20 visits, and they're feeling really good and doing really well, and then we basically end that case and we always recommend people do wellness care, which is come in once a month, but we never really got there with her. She – she's always had symptoms and I told her that we probably weren't going to be able to resolve her conditions and she should see an orthopedic. So and that probably – had a good 30 visits in over that – at least over that six months.

Dr. Reilly was cross-examined with regard to the approximate 47 medical appointments

spanning from July 14, 2015 until January 26, 2016. Medical notes from office visits indicated that Langendorfer experienced pain and soreness, especially in her back, but at other times, she self-described the pain as much better or was improving.

{¶ 5} Gastrich testified on his own behalf but did not call any expert witnesses. Thereafter, Langendorfer moved for a directed verdict on the issue of the amount of medical bills. Langendorfer asserted that the medical care and treatments were necessary and proximately caused by the accident. Langendorfer asserted that the trial court should grant the directed verdict because Gastrich did not present medical evidence on rebuttal.

{¶ 6} The trial court denied Langendorfer's motion for directed verdict. Following deliberations, the jury awarded Langendorfer $8,912.95 for past medical expenses and $500 for past mental pain and suffering for a total of $9,412.95. Langendorfer now appeals, raising a single assignment of error for review:

{¶ 7} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN FAILING TO GRANT A DIRECTED VERDICT WITH RESPECT TO THE AMOUNT OF THE MEDICAL BILLS.

{¶ 8} In her sole assignment of error, Langendorfer argues the trial court erred by denying her motion for directed verdict with respect to the $13,211.70 amount of medical bills she incurred. In so doing, Langendorfer maintains that judgment should have been granted as a matter of law because Gastrich failed to present expert medical evidence to counter the expert evidence presented during her case-in-chief. Because Gastrich failed to do so, Langendorfer alleges the trial court "was required to take that issue from the jury as a matter of law." Following review, we find Langendorfer's argument to be without merit.

{¶ 9} As a motion for directed verdict presents a question of law, our review is de novo. *Collins v. Admr., Bur. of Workers' Comp.*, 12th Dist. Madison No. CA2006-12-054, 2007-Ohio-5634, ¶ 13. A motion for directed verdict under Civ.R. 50 is to be granted when,

- 3 -

after construing the evidence most strongly in favor of the party against whom the motion is directed, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to the nonmoving party. *Id.*

{¶ 10}  The trial court need not consider either the weight of the evidence or the credibility of the witnesses in disposing of a motion for a directed verdict. *Choate v. Tranet, Inc.*, 12th Dist. Warren No. CA2005-09-105, 2006-Ohio-4565, ¶ 49.  The court must not only construe all direct and positive evidence in a light most favorable to the nonmoving party, it must also give the nonmoving party the benefit of all "reasonable inferences" that may be drawn from the evidence. *Collins* at ¶ 14.

{¶ 11}  In the present case, the trial court denied Langendorfer's motion for directed verdict.  In so doing, the trial court noted that the issue of whether the medical bills were proximately caused by the accident was a matter of the jury.

> [T]he doctors did not say that she didn't need it.  They didn't say she did.  What they said was that she came in, followed their course of treatment.  His own words, according to Dr. Reilly were, it got better, sometimes it got worse, it got better, it got better, it was mild.
>
> So what I haven't heard is that she had to go back.  What I haven't heard is that she shouldn't have gone back.  The doctors really never talked about that, either of them, of whether they were going to stop treatment.  Dr. Reilly did say after 47 meetings, he finally decided that she needed to seek an orthopedic evaluation.
>
> I just want to make sure everybody heard it the way I heard it and that there was evidence elicited that she was improving and then she was un-improving.  It kind of waxed and waned.  Did everybody kind of hear it that way?

{¶ 12}  Following review, we find the trial court did not err by denying Langendorfer's motion for directed verdict.  Though Gastrich did not present expert medical testimony, we find the evidence does not establish that Langendorfer was entitled to the $13,211.70 for medical expenses as a matter of law.  As noted in *Shadle v. Morris*, 5th Dist. Stark No.

- 4 -

2012CA00073, 2013-Ohio-906 "a defendant is not obligated to put on testimony about the cause of an injury or to provide an alternative theory about causation. Defendants can avoid a directed verdict on this subject through cross-examination, presentation of contrary evidence that the negligence was not the probable cause of the injury, or presenting evidence of alternative causes of the injury." *Id.* at ¶ 33.

{¶ 13} In this case, Gastrich cross-examined Dr. Reilly with regard to the treatment plan utilized following the accident. On cross-examination, Dr. Reilly acknowledged that the approximate 47 times he treated Langendorfer was "high" and ultimately referred her to an orthopedist. The jury considered this evidence, including the necessity of treatments based on Langendorfer's medical records, and found that Gastrich should not be liable for all medical expenses Langendorfer incurred. Ultimately, the jury found that Gastrich was only liable for the $8,912.95 past medical expenses proximately caused by the accident. The jury was in the best position to determine whether all costs alleged by Langendorfer were necessary and proximately caused by Gastrich. As the trial court did not err by denying Langendorfer's motion for directed verdict, we overrule her sole assignment of error.

{¶ 14} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.