[Cite as *Poteet v. MacMillan*, 2022-Ohio-876.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| NICKY POTEET, | : | |
| Appellee, | : | CASE NO. CA2021-08-071 |
| | : | O P I N I O N |
| - vs - | | 3/21/2022 |
| | : | |
| JEAN M. MacMILLAN, | : | |
| Appellant. | : | |


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CV91634


Rittgers & Rittgers, and Gus J. Lazares; Richard P. Gabelman, for appellee.

Gallagher, Gams, Tallan Barnes & Littrell L.L.P., and Laura Plank Founds and Robert J. Kidd, for appellant.


**PIPER, J.**

{¶1} Defendant, Jean MacMillan, appeals the judgment of the Warren County Court of Common Pleas finding in favor of plaintiff, Nicky Poteet, and awarding damages.

{¶2} On November 15, 2017, MacMillan failed to yield the right of way and struck Poteet with her vehicle as Poteet was walking on the sidewalk at the entrance of a parking lot. Poteet sustained an open comminuted fracture of her distal tibia ("pilon fracture") as well as a fracture of her distal fibula, which together constitute the ankle joint, and a fracture

of the patella. She underwent surgery the same day. As part of that procedure, an external fixation device was temporarily placed on her leg for stability to aid healing.

{¶3} On December 5, 2017, Dr. Indresh Venkatarayappa performed a second surgery on Poteet, which involved the removal of the external fixator and performance of an open reduction and internal fixation of the tibia. This involved placing a plate and screws in Poteet's ankle to aid permanent stabilization. After the procedure, Poteet had follow-up visits with Dr. Venkatarayappa on December 15, 2017, December 29, 2017, February 2, 2018, and March 16, 2018. Dr. Venkatarayappa advised Poteet to perform physical therapy exercises to improve her range of motion, and physical therapists at the hospital taught her exercises and provided her with bands to perform those exercises at home. Dr. Venkatarayappa told Poteet to return for a six-month follow-up appointment in June 2018. Poteet failed to schedule that appointment and did not seek further treatment until June 2019 for an unrelated sprain.

{¶4} Poteet filed suit against MacMillan. Before trial, MacMillan stipulated that "Defendant Jean MacMillan's negligence was the sole cause of the November 15, 2017 accident" and that "[MacMillan's] negligence in the November 15, 2017 accident caused injury to Plaintiff Nicky Poteet." The matter proceeded to jury trial on the issue of damages. At trial, three doctors testified: Dr. Venkatarayappa, who performed Poteet's second surgery and became her treating physician, Dr. Jonathan Paley, an expert witness for Poteet, who examined her before trial, and Dr. Jonathan Feibel, an expert witness for MacMillan, who performed a review of Poteet's medical records before trial. Poteet herself testified that she had ongoing pain as a result of the injuries.

{¶5} After Poteet rested, MacMillan moved for a directed verdict on the issue of permanent and substantial physical deformity pursuant to R.C. 2315.18(B)(3)(a). MacMillan asserted that Poteet presented no evidence of what her leg currently looked like,

and there was no evidence to rely upon to find that the current condition of Poteet's leg was deformed, and if there was any existing physical deformity, there was no evidence such deformity was substantial. The trial court denied this motion and after crafting deviations from the Ohio Jury Instructions ("OJI"), submitted the issue to the jury. Additionally, the trial court sua sponte issued a directed verdict that Poteet had experienced a "permanent injury or loss." MacMillan objected to the ruling, but the objection was overruled.

{¶6} On February 24, 2021, a jury rendered a verdict in favor of Poteet for $825,000. The jury signed an Interrogatory stating that Poteet had sustained a permanent and substantial physical deformity. The verdict was reduced to judgment on March 1, 2021. MacMillan now appeals, raising seven assignments of error.

{¶7} Assignment of Error No. 1:

{¶8} THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT IN APPELLEE'S FAVOR ON THE ISSUE OF WHETHER APPELLEE SUSTAINED A PERMANENT INJURY AS A RESULT OF THE ACCIDENT.

{¶9} MacMillan first argues that the trial court erred in granting a directed verdict that Poteet had sustained a "permanent injury or loss." In reviewing jury instructions with counsel, the trial court indicated that it would sua sponte direct a verdict that Poteet sustained a permanent injury. MacMillan objected, citing the conflicting testimony of the three doctors. Ultimately, the trial court instructed the jury, "You are instructed that the injury or loss in this case is permanent and will continue into the future." MacMillan requested the trial court identify the injuries warranting a directed verdict, but the trial court declined to identify which of Poteet's injuries it considered permanent, noting that "the statute doesn't require that."

{¶10} As a directed verdict involves a question of law, our review of the trial court's judgment is de novo. *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette No. CA2014-06-

015, 2015-Ohio-1600, ¶ 10.   A directed verdict may not be granted if reasonable minds could come to different conclusions as to the evidence presented on the essential elements of the claim.   *Langendorfer v. Gastrich*, 12th Dist. Clermont No. CA2018-05-032, 2018-Ohio-4656, ¶ 21.   The "reasonable-minds test" requires the trial court to determine whether there is any "evidence of substantive probative value" that favors the party against which the verdict is to be directed.   *Rieger v. Giant Eagle, Inc.*, 157 Ohio St.3d 512, 2019-Ohio-3745, ¶ 9.   Where there is "substantial competent evidence" favoring that party, it is inappropriate to grant a directed verdict.   *Downard v. Rumpke of Ohio, Inc.*, 12th Dist. Butler No. CA2012-11-218, 2013-Ohio-4760, ¶ 15.

{¶11} In the present case, three doctors testified as to whether Poteet had a "permanent injury":

- Dr Venkatarayappa denied Poteet would have permanent pain but stated she would have pain "[f]or a very long period of time." He testified that Poteet was at increased risk of infection in her ankle as a result of the injury, but that the risk of infection substantially diminished after the first year following the injury. He further testified that he had no concerns that the malunion of Poteet's fibula would affect weightbearing.  He did not observe a limp or swelling of the ankle.

- Dr. Feibel testified that Poteet's ankle fracture had fully healed and that she would not require another surgery given that three years after the injury, there were no signs of arthritis.

- Dr. Paley observed a limp, loss of range of motion, and swelling in Poteet's ankle.  He testified that these were permanent, and that Poteet would have chronic pain and ultimately require an additional surgery.

There is clearly a conflict among the three doctors regarding the permanence of Poteet's injuries.   Given this conflict, reasonable minds could differ as to whether Poteet in fact suffered a permanent injury.   As such, it was inappropriate for the trial court to render a directed verdict on this issue.   Compounding the matter, by not specifying the injury or loss

it considered permanent, the trial court inadvertently created an ambiguity prejudicial to MacMillan. *Silver v. Jewish Home of Cincinnati*, 12th Dist. Warren No. CA2010-02-015, 2010-Ohio-5314, ¶ 81 (ambiguity in a portion of the jury instructions may constitute reversible error if it renders the instructions so misleading that they prejudicially affect a substantial right of the complaining party). We therefore sustain MacMillan's first assignment of error and vacate the directed verdict finding that Poteet sustained a permanent injury.

{¶12} Assignment of Error No. 2:

{¶13} THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR A DIRECTED VERDICT ON THE ISSUE OF WHETHER APPELLEE SUSTAINED A PERMANENT AND SUBSTANTIAL PHYSICAL DEFORMITY SUCH THAT THE STATUTORY DAMAGE CAP SET FORTH IN R.C. 2315.18 APPLIED.

{¶14} MacMillan next argues that the trial court erred in denying her motion for a directed verdict that Poteet did not have a permanent and substantial physical deformity. An appellate court reviews a judgment on a motion for directed verdict de novo. *Langendorfer*, 2018-Ohio-4656, at ¶ 9. "[W]here reasonable minds can come to one conclusion based on the evidence submitted and that conclusion is adverse to the nonmoving party, then the motion should be granted." *Jackson v. Hogeback*, 12th Dist. Butler No. CA2013-10-187, 2014-Ohio-2578, ¶ 21.

{¶15} R.C. 2315.18(B)(3)(a) caps noneconomic actions in certain actions. It states,

> There shall not be any limitation on the amount of compensatory damages that represents damages for noneconomic loss that is recoverable in a tort action to recover damages for injury or loss to person or property if the noneconomic losses of the plaintiff are for either of the following:
>
> (a) *Permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system*;

(b) Permanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities.

(Emphasis added.)

{¶16} It is undisputed that Poteet's injuries did not constitute loss of use of a limb, loss of a bodily organ system, or a permanent physical functional injury preventing independent care for self.[1] The issue then, is (1) whether sufficient evidence was presented that Poteet's injuries left her with a "physical deformity," and (2) if so, whether such physical deformity is "substantial."

{¶17} The phrase "permanent and substantial physical deformity" is not statutorily defined. The Ohio Supreme Court has given some guidance as to its interpretation, finding that the exceptions to the cap on damages in R.C. 2315.18(B)(3) require "extreme qualifications." *Simpkins v. Grace Brethren Church of Delaware, Ohio*, 149 Ohio St.3d 307, 2016-Ohio-8118, ¶ 43, quoting *Weldon v. Presley*, N.D.Ohio No. 1:10 CV 1077, 2011 WL 3749469, *6 (Aug. 9, 2011). It has elsewhere noted that the cap will be lifted only for "catastrophic injuries." *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 47.

{¶18} Both state and federal courts have grappled with the meaning of the phrase "permanent and substantial physical deformity." These cases arise out of the cap on noneconomic damages found in R.C. 2315.18(B)(3) and 2323.43(A)(3). While

---

1. These phrases are important even though they represent conditions Poteet does not claim existed, because they represent significant impairment of a remarkable nature. "Under the rule of interpretation known as *noscitur a sociis*, words that are listed together should be understood in the same general sense." *Vossman v. AirNet Sys., Inc.*, 159 Ohio St.3d 529, 2020-Ohio-872, ¶ 19. "That is, '[t]his canon counsels that a word is given a more precise meaning by the neighboring words with which it is associated.'" *State v. Gilbert*, 12th Dist. Butler No. CA2020-11-116, 2021-Ohio-2810, ¶ 14, quoting *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, ¶ 13. Here, "permanent and substantial physical deformity" is listed alongside "loss of use of a limb" and "loss of a bodily organ system." The way courts have construed the latter demonstrates how "extreme" the qualifications are to lift the statutory cap on damages. *See Williams v. Bausch & Lomb Co.*, S.D.Ohio No. 2:08-CV-910, 2010 WL 2521753 (June 22, 2010) (holding that the complete loss of sight in one eye fell short of "loss of a bodily organ system" because the plaintiff, who was able to partially see out of the other eye, had not suffered a complete loss of her ocular *system*).

- 6 -

R.C.2323.43(A)(3) pertains solely to medical malpractice actions, the two statutory caps are substantially identical. There is general agreement among all courts that have examined these issues that, as gatekeeper, "[t]he trial court must determine whether there is enough evidence to meet the basic evidentiary threshold. Once that threshold is met, it is for the trier of fact, not the court, to determine whether the damages constitute permanent and substantial deformity." *Fairrow v. OhioHealth Corp.*, 10th Dist. Franklin No. 19AP-828, 2020-Ohio-5595, ¶ 68.

{¶19} "Courts have used dictionary definitions to determine the plain and ordinary meaning of a statutory term." *State v. Jackson*, 12th Dist. Butler No. CA2011-06-096, 2012-Ohio-4219, ¶ 34. A "deformity" is defined as "a physical blemish or distortion" or "the state of being deformed," deformed meaning "distorted or unshapely in form" or "misshapen." *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/deformity, and https://www.merriam-webster.com/dictionary/deformed (accessed Feb. 15, 2022); *see also Setters v. Durrani*, 1st Dist. Hamilton No. C-190341, 2020-Ohio-6859, ¶ 33; *and Adams v. Durrani*, 1st Dist. Hamilton No. C-200173, 2022-Ohio-60, ¶ 65. The same dictionary defines "blemish" as "a *noticeable* imperfection" and "distortion" as "the quality or state of being distorted" (with "distorted" meaning "twist[ed] out of a natural, normal, or original shape or condition"). (Emphasis added.)

{¶20} The key point is that a deformity must be *visible* or *noticeable*. A metal plate and screws are per se *not* a deformity, as a "deformity" is a characteristic of the subject being deformed (in this case the person), rather than a foreign, internal, unobservable

object.[2]

{¶21} The three doctors testified about Poteet's injuries as follows:

- Dr. Venkatarayappa testified that Poteet had some scarring but "no visible deformity." He stated that the wound was properly classified as a "grade I" injury, which meant the open wound was only one centimeter in length. While he noted a malunion of the fibula, he referred to it as "a consequence of this type of injury," rather than a "complication," and stated that the tibia was "fully healed." Dr. Venkatarayappa further testified that there was no shortening of Poteet's leg as a result of the hardware, and stated that the plate and screws in her ankle are "intended to be permanent."

- Dr. Feibel declared the injury fully healed and also testified that there was a tibial malunion, but said it was highly unlikely Poteet would require another surgery.

- Dr. Paley said there was "technically * * * a malunion" but that "a malunion is not an uncommon thing," implicitly acknowledging it was minor. He expressed the belief that Poteet has scars, a malunion, and a plate in her ankle, all permanent in nature, and that she would need another surgery. Only in response to a single leading question when asked whether her injuries constituted a permanent and substantial physical deformity, Dr. Paley replied, "I think left to stand as is, these deformities are permanent," yet he did not identify or reference any specific condition and ultimately stopped short of categorizing anything as substantial or severe.

None of the doctors testified that Poteet's injuries resulted in damage which was substantial or extreme. None of the doctors described, or indicated they observed, a remaining condition considered to be an actual deformity. Dr. Paley ultimately emphasized the permanence of the injuries more so than their severity. There was no testimony that

_____

2. It is possible that internal hardware may create an outward deformity if it causes an individual to be misshapen. In the case sub judice however, there was no testimony that the plate and screws in Poteet's ankle created a condition that is outwardly observable. Reconstructive hardware is more analogous to a pacemaker (itself a piece of internal hardware), which is not observable and does not create a "deformity." A pacemaker is merely an aid to regulate heartbeat, in the same manner that an internal brace provides support.

scarring, the malunion, or the internal hardware in Poteet's ankle resulted in the ankle being distorted, unsightly, or misshapen.

{¶22} Poteet herself did not testify as to any scarring in existence. However, during her testimony, she introduced two photographs, one showing an internal fixator on her leg and the other showing an external fixator through her heel bone, both following her first surgery, on November 15, 2017. Both photographs (approximately four years old) showed the fresh wounds from surgery but not scarring. MacMillan argues that because Poteet did not present any evidence to the jury regarding what her leg looked like *at the time of trial*, "the jury could only speculate as to whether her ankle was visibly deformed."

{¶23} There is no question that Poteet has a malunion. It is also apparently undisputed that Poteet will retain the metal plate and screws in her ankle permanently. However, there was no testimony that the malunion or internal hardware misshaped any part of her body in any noticeable way. There was no evidence as to the extent or severity of any scarring, no testimony as to the present appearance of any scarring, nor testimony describing any scarring as a substantial deformity. Poteet relied on photographs taken in close proximity to the surgery, before her wounds had healed, inviting the jury to speculate. The absence of evidence as to Poteet's scarring prohibits the jury from considering whether it constituted a permanent and substantial physical deformity. Likewise, with no evidence the malunion created an outward deformity, or that it was substantial in nature, the jury should not have been placed in a position to speculate that Poteet's malunion constituted a substantial physical deformity. Finally, there is no evidence that the internal hardware created or contributed to a deformity, let alone a substantial deformity.[3]

---

3. Federal district courts which have considered internal hardware in their calculus of permanent and substantial physical deformity, have combined it with other serious factors, such as severe scarring and other distortions. *See Schmid v. Bui*, N.D.Ohio No. 5:19-CV-1663, 2020 WL 8340144 (Sept. 16, 2020); *Ross v. Home Depot USA Inc.*, S.D.Ohio No. 2:12-CV-743, 2014 WL 4748434 (Sept. 23, 2014) ; and *Ohle v. DJO Inc.*, N.D.Ohio No. 1:09-CV-02794, 2012 WL 4505846 (Sept. 28, 2012).

{¶24} The Ohio Supreme Court has provided little guidance on what constitutes a permanent and substantial physical deformity, but where it has spoken, it is clear that the standard is stringent. *See Simpkins*, 2016-Ohio-8118 at ¶ 43 ("extreme qualifications" required); *Arbino*, 2007-Ohio-6948 at ¶ 47 ("catastrophic injury" necessary). We choose to look to the supreme court's high standard rooted in the statute's text rather than to the non-binding federal district court decisions to which Poteet directs us.[4]

{¶25} After reviewing the record and construing the evidence in the light most favorable to Poteet, we find that the trial court erred by denying MacMillan's motion for a directed verdict on the issue of whether Poteet's injuries constituted a permanent and substantial physical deformity. Simply put, there was no evidence presented that at the time of trial that Poteet suffered a specific deformity, or that she has a certain deformity that is substantial in nature. We accordingly conclude that reasonable minds can only conclude that Poteet did not sustain a permanent and substantial physical deformity and that MacMillian was entitled to a directed verdict. *See* Civ.R. 50(A)(4); App.R. 12(B). MacMillan's second assignment of error is sustained.

{¶26} For ease of discussion, MacMillan's next two assignments of error will be addressed together.

{¶27} Assignment of Error No. 3:

{¶28} THE TRIAL COURT ERRED WHEN IT INCLUDED ADDITIONAL LANGUAGE IN THE JURY INSTRUCTIONS REGARDING PERMANENT AND SUBSTANTIAL PHYSICAL DEFORMITIES.

{¶29} Assignment of Error No. 4:

---

4. "It is axiomatic that a court of appeals must follow established Ohio Supreme Court precedent." *State v. Reyes*, 12th Dist. Butler Nos. CA2015-06-113, CA2015-06-114, and CA2015-06-115, 2016-Ohio-2771, ¶ 21. Conversely, "the decisions of federal courts constitute persuasive authority only and are not binding on this court." *State v. Prom*, 12th Dist. Butler No. CA2004-07-174, 2005-Ohio-2272, ¶ 22.

{¶30} THE TRIAL COURT ERRED WHEN IT REFUSED, OVER APPELLANT'S OBJECTION, TO GIVE THE JURY AN INSTRUCTION CONCERNING PROXIMATE CAUSE.

{¶31} MacMillan next argues that the trial court erred in giving certain jury instructions. "A trial court is obligated to provide jury instructions that correctly and completely state the law. The jury instructions must also be warranted by the evidence presented in a case. The question of whether a jury instruction is * * * factually warranted is subject to de novo review." (Citations omitted.) *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, ¶ 22. "When considering the appropriateness of a jury instruction, or when a specific jury instruction is in dispute, a reviewing court must examine the instructions as a whole." *A N Bros. Corp. v. Total Quality Logistics, L.L.C.,* 12th Dist. Clermont No. CA2015-02-021, 2016-Ohio-549.

**A. The Instruction on Permanent and Substantial Physical Deformity**

{¶32} Given our determination that MacMillan was entitled to a directed verdict on the issue of whether Poteet suffered a permanent and substantial physical deformity, the third assignment of error is hereby rendered moot and need not be addressed.

**B. The Instruction on Proximate Cause**

{¶33} MacMillan also argues that the trial court erred by failing to instruct the jury on the definition of proximate cause. "An appellate court will reverse a trial court's refusal to give a proposed jury instruction only if (1) the trial court abused its discretion by failing to give the requested instruction and (2) the complaining party was prejudiced as a result." *Citibank, N.A. v. Ebbing*, 12th Dist. Butler No. CA2012-12-2252, 2013-Ohio-4761, ¶ 28. "A trial court is not required to give a proposed jury instruction merely because counsel submitted it." *Id.*

{¶34} In the present case, the trial court gave the following instruction on causation:

> You are instructed in this case that Jean MacMillan was negligent and the negligence of Jean *MacMillan proximately caused some injury and damage*. The issue you will decide is an amount that will compensate Nicky Poteet for the injury and damage caused by this accident. In assessing the plaintiff's damages, you will determine from the preponderance of the evidence, an amount of money that reasonably compensates Nicky Poteet for *the actual injury and loss directly caused* by the negligence of Jean MacMillan.

(Emphasis added.) MacMillan objected to the trial court's refusal to recite the definition of proximate cause found in the OJI. The OJI defines proximate cause as follows, "'(Proximate) (Direct) cause' is an act or failure to act that in the natural and continuous sequence directly produced the (injury) (death) (damages) and without which the (injury) (death) (damages) would not have occurred." *Ohio Jury Instructions*, CV Section 405.01 (Rev. Feb. 11, 2017).

{¶35} Like the OJI instruction requested by MacMillan, the trial court's instructions used "proximate" and "direct" cause interchangeably. MacMillan argues that the trial court's instruction, absent her proposed instruction on proximate cause, suggests that MacMillan was responsible for causing the full extent of all injuries Poteet complained of. However, by instructing the jury that MacMillan caused "some" injury to Poteet, the trial court's instruction did not preclude the jury from making its own determinations as to the scope of MacMillan's responsibility. The trial court did not abuse its discretion in refusing to issue MacMillan's requested instruction. MacMillan's fourth assignment of error is overruled.

{¶36} Assignment of Error No. 5:

{¶37} THE TRIAL COURT ERRED IN PRECLUDING APPELLANT FROM PRESENTING EVIDENCE AT TRIAL THAT APPELLEE WAS INCARCERATED FOLLOWING THE ACCIDENT, WHEN THIS EVIDENCE WOULD HAVE BEEN RELEVANT TO CHALLENGE APPELLEE'S PROFFERED EXPLANATION FOR WHY

SHE DID NOT CONTINUE TO RECEIVE TREATMENT, AND WHETHER SHE ACTUALLY PERFORMED HOME THERAPY AS INSTRUCTED.

{¶38} MacMillan next argues that the trial court abused its discretion by excluding evidence of Poteet's post-accident incarceration. "The admission or exclusion of relevant evidence rests within the discretion of the trial court." *Donlon v. Lineback*, 12th Dist. Warren Nos. CA2016-03-015 and CA2016-03-016, 2016-Ohio-7739, ¶ 32. "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). "An appellate court will not disturb a decision of the trial court to admit or exclude evidence absent a clear and prejudicial abuse of discretion." *Donlon* at ¶ 32.

{¶39} Before trial, Poteet filed a motion in limine "to exclude references to plaintiff's economic status and prior residency." In Poteet's deposition, she attested that at certain periods between the accident and the deposition (taken May 22, 2019), she was in the Warren County Jail for a term of two months and another period of five months. Additionally, Poteet noted that she was homeless between June 2018 and December 7, 2018, and that during that time, she "was in and out of the Warren County Jail." MacMillan argues that Poteet's incarceration is relevant to explain why she did not follow through with her treatment. MacMillan noted that Poteet's counsel emphasized how Poteet diligently performed home exercises rather than formal physical therapy, but that Poteet herself in her deposition attested that she was "in and out of the Warren County Jail" during that time. The trial court found that the probative value of evidence of Poteet's incarceration was substantially outweighed by the danger of unfair prejudice and granted Poteet's motion.

{¶40} In Poteet's opening statement, her attorney discussed her home physical therapy regimen: "Throughout this time period [after her second surgery] you will hear [Poteet] testify that she aggressively did her home therapy and she worked very hard at it."

He continued, noting "Now, it wasn't always at home, it was wherever she was at." Later, he stated that "she aggressively pursued the therapy the moment she was discharged, as she was instructed by the two therapists at Atrium. We know this because she recovered and progressed well." Shortly after, he stated that "She did everything she could to get better." Later, Poteet's attorney stated that Poteet stopped attending treatment because she could not get a ride. Finally, he stated, "the indisputable fact is she had – she worked to get better. * * * She [recovered] because she worked so hard at doing therapy out of office," before finally asking the jury, "Look at how far she's come. Would someone really have two major surgeries like this and then not do home therapy? It doesn't make sense."

{¶41} Poteet testified on direct examination that physical therapists "showed [her] exercises to do at home, and gave [her] bands to do some exercises with." She testified that she began doing her home exercises "as soon as" she was discharged and that she still does them "to this day." She commented, "I think if I wouldn't have done these exercises, you know, or nothing then * * * I mean I probably wouldn't have the chance of being walking [*sic.*] again." She testified that she missed her subsequent appointments with Dr. Venkatarayappa because he told her she was progressing well at her three-month appointment so she felt she did not need treatment anymore.[5] She testified on cross-examination that she thought she was getting improvement from her home exercises, that she still does them "every day," and that she has always done them "every day."

{¶42} Otherwise inadmissible evidence may be admissible if one side "opens the door" by taking advantage of a favorable Evid.R. 403 ruling. "In general, '[t]he evidentiary concept of "opening the door" embodies the concepts of waiver and fairness,' whereby '[i]f

_____

5. After Poteet missed her six-month follow-up appointment with Dr. Venkatarayappa, which was supposed to occur in June 2018, no further follow-up appointments were scheduled. Since the motion in limine was granted, cross-examination was limited, and it is remains unknown whether she missed this appointment due to her incarceration or whether her incarceration would have interfered with potential follow-up appointments.

one party offers evidence that is otherwise inadmissible as being irrelevant under the rules of evidence, the courts will consider that a waiver of the rules and in fairness allow the opposing party to present testimony or evidence on the same point.'" *State v. A.W.M.*, 10th Dist. Franklin No. 18AP-523, 2020-Ohio-4707, ¶ 71-81, quoting *State v. Dunbar*, 8th Dist. No. 89896, 2008-Ohio-2033, ¶ 31. However, courts have also found that attorneys have opened the door by their discussions in voir dire or their opening statements, even though such discussions and statements are not considered evidence. *See Howard v. HCR ManorCare, Inc.*, 2d Dist. Clark Nos. 2016-CA-75 and 2017-CA-16, 2018-Ohio-1053, ¶ 120; *State v. Bartlett*, 10th Dist. Franklin No. 10AP-1001, 2011-Ohio-3599, ¶ 8-12.

{¶43} Poteet's testimony leans heavily on the suggestion that she completed all of her home exercises *every day* that she was physically able to do so, from the time of the accident to the time of the trial. Poteet's testimony, if believed, would be significant evidence that she mitigated damages to the fullest extent possible, and that therefore any remaining pain, or the duration of her recuperation, would be wholly the fault of MacMillan. If Poteet represented that she was fastidious in performing her home exercises, it seems only fair to challenge the credibility of such representations, since evidence existed establishing that she was homeless and incarcerated for significant periods of time. Further, Poteet testified that she was given "bands" for physical therapy purposes; the jury should have been permitted to determine if it is credible that these would have been used, or accessible, while homeless or incarcerated.

{¶44} Evid.R. 403 is used to create a level playing field when relevant evidence must be excluded because the danger of unfair prejudice substantially outweighs any probative value. Yet Evid.R. 403 must be cogently applied in a manner that the exclusion of a valid challenge to credibility does not actually, even if inadvertently, create an unlevel playing field.

{¶45} Poteet's testimony, combined with her counsel's opening statement "opened the door" for MacMillan to, in fairness, question her about her practical capabilities to follow through with physical therapy exercises with the level of commitment or intensity portrayed to the jury. It was therefore an abuse of discretion to exclude evidence of Poteet's post-accident incarceration, and her being homeless, for the limited purpose of questioning the veracity of her testimony. As such, MacMillan's fifth assignment of error is sustained.

{¶46} Assignment of Error No. 6:

{¶47} THE TRIAL COURT ERRED IN PRECLUDING APPELLANT FROM PRESENTING EVIDENCE AT TRIAL THAT APPELLEE HAD A SUBSTANCE ABUSE PROBLEM, WHEN SUCH EVIDENCE WOULD HAVE BEEN RELEVANT TO CHALLENGE APPELLEE'S PROFFERED EXPLANATION FOR WHY SHE DID NOT CONTINUE TO RECEIVE TREATMENT, AND CLAIMS OF ONGOING PAIN DESPITE A LACK OF OBJECTIVE EVIDENCE TO SUPPORT SUCH CLAIMS.

{¶48} MacMillian next argues that the trial court abused its discretion by excluding evidence of Poteet's post-accident substance use disorder and drug seeking behavior. Again, "[t]he trial court's decision to admit or exclude evidence under Evid.R. 403 lies within the trial court's discretion and will not be reversed absent an abuse of discretion." *Formica v. Dehner*, 12th Dist. Warren No. CA2015-03-016, 2016-Ohio-75, ¶ 26.

{¶49} Before trial, Poteet filed a motion in limine to prevent references to her illicit drug use at trial, stating that such references would be irrelevant, collateral, and unfairly prejudicial. Poteet filed another motion in limine to "exclude medical records unrelated to this case." Among the records was a November 21, 2017 record of a drug overdose that required hospitalization.[6] The motion in limine characterized the incident thusly, "Plaintiff

---

6. Poteet overdosed on a combination of Percocet and Tylenol PM and had to be revived with Narcan.

lost track of time and unintentionally took her physician prescribed Percocet too close in time. As a result, Plaintiff lost consciousness and went to the ER for an accidental overdose." Poteet argued that these records were not relevant.

{¶50} MacMillan disputed Poteet's characterization of her 2017 overdose as "accidental." MacMillan argued that evidence of Poteet's drug seeking behavior would provide an alternative explanation for Poteet's ongoing complaints of pain and discomfort. MacMillan also noted that there were substantial gaps in Poteet's treatment, and that one explanation is that Poteet stopped following through with treatment because Dr. Venkatarayappa denied her additional opioid pain medications. Poteet herself admitted to using methamphetamines after Dr. Venkatarayappa ceased prescribing additional pain medications because he believed the injury had healed. The trial court deferred ruling until it could examine the doctors' depositions. Following the first day of trial, the trial court made its rulings on the record and excluded the evidence.

{¶51} The analysis for this assignment of error is similar to the previously discussed fifth assignment of error. Ultimately, however, we find that the trial court did not abuse its discretion in excluding evidence of Poteet's drug use and a characterization of her conduct as drug seeking behavior. The trial court noted that none of the doctors testified in their depositions that they suspected Poteet of seeking drugs in a manner that could have been attributed to substance abuse. The notion that Poteet was involved in drug seeking behavior, while possible, was not developed in the record. Even if offered to suggest an alternative motive for her continued complaints of pain, any probative value was substantially outweighed by the danger of unfair prejudice. The record demonstrates the trial court went through a process weighing the probative value and the prejudicial effect. The trial court expressed reasonable concerns that the jury would be unable to see past Poteet's use, or misuse, of drugs. Consequently, the trial court did not abuse its discretion

in this regard, and we overrule MacMillan's sixth assignment of error.

{¶52} Assignment of Error No. 7:

{¶53} THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND/OR MOTION FOR A NEW TRIAL.

{¶54} MacMillan next argues that the trial court erred by denying her motion for judgment notwithstanding the verdict and motion for a new trial. In light of our resolution of MacMillan's first, second, and fifth assignments of error, we find this assignment of error is moot and need not be addressed. *See* App.R. 12(A)(1)(c).

{¶55} Judgment affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.

M. POWELL, P.J., and HENDRICKSON, J., concur.