[Cite as *Batsche v. Batsche*, 2024-Ohio-1234.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

THOMAS BATSCHE, SR., et al.,      :

      Appellants,               :        CASE NO. CA2023-08-051

                           :        O P I N I O N
   - vs -                                 4/1/2024

                           :

CAROL VOGELE EGNOR BATSCHE,     :

      Appellee.                :

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 2021CV00327

Dinsmore & Shohl, LLP, and Sarah B. Cameron, for appellants.

Becker & Cade, and Dennis A. Becker, for appellee.

**S. POWELL, P.J.**

{¶ 1} Plaintiff-Appellants, Thomas and Jesse Batsche, appeal the decision and judgment entry of the Clermont County Court of Common Pleas, Probate Division, denying their motion for judgment notwithstanding the verdict and for new trial. Jesse Batsche is the next of kin of the estate of Kimberly Batsche, an original plaintiff to this action. Thomas and Kimberly Batsche are biological children of Ronald Batsche. For

readability purposes, the plaintiffs shall be referred to solely as "Thomas." Defendant-Appellee, Carol Batsche, stepmother of Thomas, shall be referred to as "Carol."

**General Background and Procedural Posture**

{¶ 2}   During their marriage, Ronald and Carol maintained money management accounts with The Vanguard Group, Inc. Ronald also designated Carol as his power of attorney in December of 2011. Ronald had Vanguard accounts that listed Thomas as a beneficiary upon Ronald's death.

{¶ 3}   The conflict of this case stems from two separate transactions initiated by Carol from these accounts. The first was a $25,000 withdrawal on November 18, 2020 when Ronald was still alive but in Hospice care (the "November Withdrawal"). The November Withdrawal went into an account under both Ronald's and Carol's names. The second was a $50,000 withdrawal on January 5, 2021 (the "January Withdrawal") and occurred after Ronald passed away on December 3, 2020. Ronald's health had been on the decline since 2017.

{¶ 4}   Thomas eventually learned about these transactions and filed suit. His complaint alleged several causes of action relevant to this appeal: (1) tortious interference with the expectancy of inheritance ("TIEI") as to the November Withdrawal; (2) civil theft as to the January Withdrawal; and (3) conversion as to the January Withdrawal.

{¶ 5}   During the ensuing litigation, Thomas filed a motion for summary judgment. After the motion was denied, the case was tried to a jury. The jury found Carol not guilty of TIEI as to the November Withdrawal but guilty of civil theft as to the January Withdrawal. However, the jury awarded no damages to Thomas. While not an issue on appeal, there is dispute about whether Carol returned the January Withdrawal to Vanguard, which could have led to the jury's determination that Thomas was not damaged by the civil theft.

{¶ 6} After trial, the court subsequently entered a judgment consistent with the jury's verdict. In that judgment, the trial court also awarded Thomas no damages. The trial later denied Thomas' motion for judgment notwithstanding the verdict and motion for a new trial. Thomas now appeals.

{¶ 7} Further details will be discussed below.

{¶ 8} **Assignment of Error No. 1:**

{¶ 9} **THE TRIAL COURT ERRED BY DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT.**

### A. Background

{¶ 10} As previously stated, Thomas filed for summary judgment as to his TIEI and civil theft claims. In the alternative to his civil theft claim, Thomas asked for summary judgment as to his conversion claim. The trial court denied the motion. As to his TIEI claim, the trial court found that "[w]hile Carol had the opportunity to influence Ronald," as she was his power of attorney, issues of material fact remained as to whether he "was susceptible to influence, * * * [and] whether [Carol] actually exerted undue influence and achieved the desired effect." As to Thomas' conversion claim, the trial court found:

> The facts are undisputed that [Thomas] had an interest in the Vanguard funds as a result of [his] father's death. There is also no question here that the defendant intentionally exercised control over the fund in question by initiating the [January Withdrawal]. * * * [I]t is immaterial whether [Carol] thought she had the authority to withdraw the funds. This withdrawal interfered with the defendant's rights * * *.

Nonetheless, the trial court denied Thomas' motion for summary judgment, finding that because conversion was an alternate claim for civil theft, the case should still proceed to trial.

{¶ 11} Thomas argues on appeal that the trial court should have granted summary judgment in his favor as to the TIEI claim as well as the conversion claim. Specifically,

Thomas argues that Carol failed to put forth evidence to overcome the legal presumption that she violated her fiduciary duty to Ronald by initiating the November Withdrawal for her benefit. Thus, Thomas contends that the trial court should have granted him summary judgment as a matter of law. Additionally, Thomas argues that the trial court improperly denied summary judgment as to his conversion claim after finding no issues of material fact as to the claim.

## B. Standard of Review

{¶ 12} A trial court may grant summary judgment when, "there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor." *Total Quality Logistics, L.L.C. v. JK & R Express*, L.L.C., 12th Dist. Clermont, 2022-Ohio-3969, ¶ 17. Denial of summary judgment is reviewed on a de novo basis, and appellate courts consider the same standard as the trial court. *Holtrey v. Wiedeman*, 12th Dist. No. CA2023-01-011, 2023-Ohio-2440, ¶ 12.

{¶ 13} However, we have consistently held that denial of summary judgment based on issues of material fact followed by a verdict in favor of the nonmoving party renders the denial of summary judgment moot or harmless. *South v. Browning*, 12th Dist. Warren No. CA2012-09-088, 2013-Ohio-1491, ¶ 27; *Clarkwestern Dietrich Bldg. Systems, LLC v. Certified Steel Stud Assn., Inc.*, 12th Dist. Butler No. CA2016-06-113, 2017-Ohio-2713, ¶ 12; *Camara v. Gill Dairy, LLC*, 12th Dist. No. CA2022-10-023, 2023-Ohio-2339, 220 N.E.3d 257, ¶ 14. Errors in denying summary judgment that relate solely to legal questions, however, are reviewable. *Clarkwestern* at ¶ 12.

## C. Analysis

### i. Tortious Interference with Expectancy of Inheritance

- 4 -

{¶ 14} To prove TIEI, a plaintiff must demonstrate five elements: (1) the existence of an expected inheritance; (2) intentional interference with that expected inheritance by the defendant; (3) the defendant's interference was tortious in nature, including instances of fraud, duress, or undue influence; (4) "a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant;" and (5) damages resulting from the interference. *Firestone v. Galbreath*, 67 Ohio St.3d 87, 88 (1993).

{¶ 15} The arguments on appeal focus mostly on the third element, whether Carol exerted undue influence. The parties agree that an attorney-in-fact pursuant to a power of attorney has a fiduciary duty to their principal and that "where a confidential or fiduciary relationship exists between a donor and donee, the transfer is looked upon with some suspicion that undue influence may have been brought to bear on the donor by the donee." *Studniewski v. Krzyzanowski*, 65 Ohio App.3d 628, 632 (6th Dist.1989); *Neuman v. Trice*, 11th Dist. No. 2011-T-0084, 2012-Ohio-4206, ¶ 36. As a result, there is a presumption of undue influence in such situations. *Id.*

{¶ 16} Ohio Evid. R. 301 provides that "[i]n all civil actions * * * a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption * * *." Importantly, however, the rule also states this presumption "does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast."

{¶ 17} Stated differently, "a presumption is not evidence and does not switch the burden of proof; it affects only the burden of going forward with evidence." *Ament v. Reassure Am. Life Ins. Co.*, 8th Dist. No. 91185, 180 Ohio App.3d 440, 2009-Ohio-36, ¶ 40. As a result, "[when] a presumption arises that the transfer is invalid * * * the burden

- 5 -

of going forward with the evidence shifts to the transferee to demonstrate the absence of undue influence. However, the party attacking the transfer retains the ultimate burden of proving undue influence by clear and convincing evidence." *Neuman v. Trice*, 11th Dist. No. 2011-T-0084, 2012-Ohio-4206, ¶ 36, quoting *Estate of Niemi v. Niemi*, 11th Dist. Trumbull No. 2008-T-0082, 2009-Ohio-2090, ¶ 38.

{¶ 18} Here, Thomas argues the trial court should have granted summary judgment simply because a fiduciary relationship existed between Carol and Ronald, the November Withdrawal occurred between them, and the transaction benefitted Carol. This argument, made at the trial level and now on appeal, attempts to lean on the presumption of undue influence and shirk Thomas' burden of proof entirely. This is not permissible under Ohio Evid. R. 301. As a result, Thomas failed to demonstrate there was no issue of material fact and that he was entitled to summary judgment as a matter of law.

{¶ 19} Additionally, because the jury found Carol not guilty of TIEI, we find this issue moot or otherwise harmless.

### ii. Conversion

{¶ 20} As stated above, Thomas' conversion claim was an alternative claim to civil theft. We find that regardless of whether the trial court properly denied summary judgment, this assignment of error is moot because the jury found in favor of Thomas as to his civil theft claim.

{¶ 21} Thomas' first assignment of error is overruled.

{¶ 22} **Assignment of Error No. 2**

{¶ 23} **THE TRIAL COURT ERRED BY DENYING PLAINTIFFS' MOTIONS FOR DIRECTED VERDICT AND JNOV ON TORTIOUS INTERFERENCE WITH EXPECTANCY OF INHERITANCE.**

### A. Background

{¶ 24} At trial, Carol testified that the November Withdrawal was done at the behest of Ronald to cover his end-of-life expenses from an account Carol did not own or would inherit after his death. As a result, Carol stated she picked an account on which she was not a beneficiary. Carol also testified that while Ronald's health declined, he retained his mental capacities. In addition, Ronald's Hospice records as of November 15, 2020, three days before the November Transfer, showed that Ronald was alert, oriented to his "person [and] place," had no memory loss, and exhibited normal judgment and speech.

{¶ 25} After the parties presented evidence at trial, Thomas moved for a directed verdict as to his TIEI claim. The trial court denied it, finding in part that there was a question as to whether it mattered to Ronald what account Carol made the November Withdrawal from. The jury later found Carol not guilty of TIEI. After trial, Thomas moved for a judgment notwithstanding the verdict. The trial court denied that motion as well on similar grounds and also found that they jury could have concluded that Ronald was mentally alert and not susceptible to undue influence at the time the November Withdrawal was made.

{¶ 26} Thomas argues on appeal that he was entitled to directed verdict on his TIEI claim because Carol, not Ronald, made the decision to initiate the November Withdrawal from an account under which Thomas was a beneficiary. Thomas again asserts that Carol failed to overcome the presumption of undue influence regarding the transaction at trial.

**B. Standard of Review and Applicable Law**

{¶ 27} Under Ohio Civ. R. 50, the trial court may enter a directed verdict in favor of a party or a judgment notwithstanding the verdict if "reasonable minds" can only come to one conclusion after considering the evidence of the case and the elements of a party's

claims. *Poteet v. MacMillan*, 12th Dist. Warren No. CA2021-08-071, 2022-Ohio-876, ¶ 10; *Rieger v. Giant Eagle*, Inc., 157 Ohio St.3d 512, 2019-Ohio-3745, ¶ 9; *Clarkwestern*, 2017-Ohio-2713 at ¶ 28. We have previously held that "[t]he 'reasonable-minds test' requires the trial court to determine whether there is any 'evidence of substantive probative value' that favors the party against which the verdict is to be directed." *Id.*, citing *Reiger* at ¶ 9. Decisions regarding directed verdicts as well as judgments notwithstanding the verdict are reviewed de novo. *Id.*

**C. Analysis**

{¶ 28} We find no error by the trial court in denying Thomas' motions. As discussed above, Thomas' arguments regarding the presumption of undue influence are unavailing. In addition, evidence in the record demonstrates that even after considering the presumption, reasonable minds could still find that Carol exerted no undue influence on Ronald because he remained mentally capable of making decisions despite his declining physical health. This includes instructing Carol to make a withdrawal from any account Carol had no interest in so that she was not responsible for Ronald's end of life expenses.

{¶ 29} Therefore, this assignment of error is also overruled.

{¶ 30} **Assignment of Error No. 3:**

{¶ 31} **THE TRIAL COURT ERRED BY DENYING PLAINTIFFS' MOTION FOR DIRECTED VERDICT ON CONVERSION.**

{¶ 32} Similar to Thomas' first assignment of error regarding his conversion claim, we find that regardless of whether the trial court properly denied his motion for directed verdict, this assignment of error is moot because the jury found in favor of Thomas as to his civil theft claim. The legal implications of the jury's findings will be discussed below.

{¶ 33} This assignment of error is overruled.

{¶ 34} **Assignment of Error No. 4:**

{¶ 35} **THE TRIAL COURT ERRED BY FAILING TO AWARD PLAINTIFFS TREBLE DAMAGES FOR DEFENDANT'S CIVIL THEFT.**

**A. Background**

{¶ 36} The fourth count of Thomas' complaint reads "CIVIL LIABILITY AND TREBLE DAMAGES UNDER R.C. 2307.60 AND R.C. 2307.61." At the summary judgment phase, Thomas argued in his motion he was "entitled to judgment as a matter of law on [his] claims under R.C. 2307.60 and 2307.61 for damages totaling $150,000. * * * Alternatively, [Thomas] is entitled to summary judgment on [his] claim[] of * * * conversion." Thomas' pretrial statement stated he "should recover * * * full damages and attorneys' fees under R.C. 2307.60 and treble damages due to [Carol's] actions constituting theft under 2307.61 * * *."

{¶ 37} At trial, counsel for the parties and the court discussed how the jury would be instructed on Thomas' civil theft claim. Thomas' counsel stated to the court, "So, we have kept the civil theft in because of the treble damages award. But * * * you're the arbiter of the treble damages, the jury just decides civil theft?" The trial court replied, "That is my understanding." As a result, it was agreed that the issue of treble damages did not need to be presented to or discussed with the jury.

{¶ 38} Following the trial, Thomas requested the trial court award him treble damages in the amount of $150,000 pursuant to R.C. 2307.61. The trial court denied the motion, finding it had the discretion to do so under the statute and *Justice v. Justice*, 12th Dist. Butler No. CA2004-03-074, 2005-Ohio-1802.

{¶ 39} Additionally, the trial court found that even if it could award treble damages, Thomas had failed to elect them under R.C. 2307.61. The trial court noted that the request for relief at the end of Thomas' complaint did not ask for treble damages. In

addition, the trial court observed that throughout the proceedings, Thomas asserted entitlement to both compensatory and treble damages and asked the jury to determine compensatory damages at trial. The trial court further decided that R.C. 2307.60 did not, in and of itself, entitle Thomas to attorneys' fees in addition to treble damages under R.C. 2307.61. As a result, the trial court's judgment pursuant to the jury's verdict awarded Thomas no damages.

**{¶ 40}** Thomas argues on appeal that the trial court erred in denying treble damages. Specifically, Thomas argues that the trial court misapplied R.C. 2307.61 and failed to acknowledge its election to pursue treble damages.

### B. Standard of Review and Applicable Law

**{¶ 41}** Questions of law, including statutory construction, are reviewed de novo. *Willow Grove, Ltd. v. Olmsted Twp. Bd. of Zoning Appeals*, 169 Ohio St.3d 759, 2022-Ohio-4364, ¶ 16, citing *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 25, in turn citing *Lang v. Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 12.

**{¶ 42}** Under R.C. 2307.60, a victim of a criminal act "may recover full damages in, a civil action * * * [and] may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or [Ohio common law] * * *." In turn, R.C. 2307.61 states, in pertinent part, the following:

> (A) If a property owner brings a civil action * * * to recover damages from any person who * * * commits a theft offense * * * the property owner may recover as follows:
>
> > (1) In the civil action, **the property owner may elect** to recover moneys as described in division (A)(1)(a) or (b) of this section:

- 10 -

(a) Compensatory damages that may include, but are not limited to, the value of the property and liquidated damages [up to $150] * * * .

\* \* \*

(b) Liquidated damages * * * .

\* \* \*

(ii) **Three times the value of the property** at the time it was * * * the subject of a theft offense, irrespective of whether the property is recovered by way of replevin or otherwise * * * .

(Emphasis added).

## C. Analysis

{¶ 43} We construed and applied R.C. 2307.61 previously. *Justice v. Justice*, 12th Dist. Butler No. CA2004-03-074 and CA2004-04-084, 2005-Ohio-1802. In that case, we observed that under R.C. 2307.61, "the court is not required to award treble damages in a civil action. The word 'may' shall be construed as permissive absent any clear and unequivocal legislative intent that it should be construed contrary to its ordinary meaning." *Id*. at ¶ 19. As a result, we held that "[a]n award of liquidated damages as provided by R.C. 2307.61 rests within the sound discretion of the trial court." *Id*., citing *Fulmer Supermarkets v. Whitfield*, 2nd Dist. Montgomery No. 10397, 1988 WL 2430, \*2; *Stumps Enterprises, Inc. v. Loveless*, 2nd Dist. Montgomery No. 10449, 1987 WL 29575, \*2.

{¶ 44} The problem with our holding in *Justice*, and particularly its reliance upon *Fulmer* and *Stumps*, is that the latter two cases considered a prior version of R.C. 2307.61. When R.C. 2307.61 was first created, it did leave an award of treble damages at the discretion of the trial court. *Fulmer* and *Stumps* were correct in this regard. However, in 1992, after *Fulmer* and *Stumps* were decided, R.C. 2307.61(A)(1) was

- 11 -

amended and added the word "elect."  1992 Ohio Laws File 137 (S.B. 105).  This subsection of the statute has remained substantively unchanged since then.

**{¶ 45}** The ramification of this amendment is that treble damages under R.C. 2307.61(A)(1) went from a matter of the trial judge's discretion ("the property owner **may** recover") to that of a property owner's ("**the property owner may elect** to recover").  Our sister courts have held in a similar fashion.  *See Dancybey v. Dancy-Dunlap*, 8th Dist. Cuyahoga No. 111089, 2022-Ohio-2774, ¶ 11-12; *X-Technology, Inc. v. MJ Techs.*, 8th Dist. Cuyahoga No. 80126, 2002-Ohio-2259, ¶ 27, fn 5; *Commonwealth Land Title Ins. Co. v. Choice Title Agency, Inc.*; 9th Dist. Lorain No. 11CA009981, 2012-Ohio-2824, ¶ 21-23.  *Justice*, in its consideration of prior caselaw, did not account for the 1992 amendment.  Therefore, to the extent that *Justice* holds that an award of treble damages under R.C. 2307.61 is a matter of the trial court's discretion, it is overruled.

**{¶ 46}** Next, we find that Thomas did elect to pursue treble damages pursuant to R.C. 2307.61(A)(1).  Thomas' amended complaint clearly lists a cause of action for civil theft under R.C. 2307.61(A)(1).  The only remedy discussed within that cause of action was treble damages.  While treble damages was not expressly mentioned in its prayer for relief, the complaint was sufficient to put Carol on notice that treble damages were being pursued as to the civil theft claim.  Treble damages were again brought up at the summary judgment stage, before trial, and at trial.  Therefore, the record demonstrates that Thomas expressed at multiple phases of the proceedings that he had elected to exclusively pursue treble damages against Carol as to his civil theft claim.  *See Commonwealth Land Title* at ¶ 23; *Dancybey* at ¶ 14.

**{¶ 47}** This conclusion is not affected by the fact that Thomas had an alternate claim of conversion for compensatory damages.  As to the January Withdrawal, Thomas indicated at the summary judgment and trial phases that he was proceeding on the civil

theft claim first and the conversion claim second. Therefore, if the trial court or the jury found in favor of Thomas regarding the civil theft claim, they did not need to decide the conversion claim.

**{¶ 48}** Thus, the question of compensatory damages as to the civil theft claim did not need to be submitted to the jury at trial. R.C. 2307.61 is resolute in when damages should be awarded and in what amount. The property stolen was $50,000. Under R.C. 2307.61, it does not matter whether the money was recovered (and there appears to be dispute over whether it was ultimately recovered by Thomas). Therefore, because Thomas elected to pursue treble damages under R.C. 2307.61(A)(1)(b)(ii), he was entitled to $150,000 in liquidated damages upon a finding of civil theft in the amount of $50,000. The fact that the jury, at the behest of the interrogatories they were given, made a determination as to compensatory damages does not overcome the mandate of R.C. 2307.61.

**{¶ 49}** Finally, it also does not matter that Thomas, at one point in the proceedings, requested attorneys' fees under R.C. 2307.60. We agree with the trial court that R.C. 2307.60 does not, by itself, entitle Thomas to attorneys' fees for his successful civil theft claim because the statute says that plaintiffs may get attorneys' fees "if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or [Ohio common law]." However, just because Thomas asserted a right to other types of damages under different legal theories does not mean he neglected to elect treble damages under R.C. 2307.61.

**{¶ 50}** This assignment of error is sustained.

## Conclusion

**{¶ 51}** This case, at all stages of the proceedings, was undoubtedly complicated by Thomas' repeated demands for judgment under various legal theories which, if

granted, entitled him to different types and amounts of damages. We find no issue with how the trial or jury applied or resolved the factual issues in this case. However, we conclude that because the jury found Carol guilty of civil theft and Thomas elected to pursue treble damages under R.C. 2307.61, he is entitled to receive those damages. As a result of the foregoing, we overrule Thomas' first three assignments of error, but sustain the fourth assignment of error.

{¶ 52} Judgment reversed and remanded for further proceedings according to law and consistent with this opinion.

HENDRICKSON, J., concurs.

PIPER, J, dissents.

**PIPER, J. dissenting.**

{¶ 53} While I concur in overruling Thomas' first, second, and third assignments of error, I respectfully dissent from the majority's sustainment of the fourth assignment of error. Despite having a jury trial, Thomas claims the trial court erred in not awarding him treble damages for civil theft. The Achilles' heel to Thomas' claim is that the jury found there were no damages as a result of the civil theft.

{¶ 54} For purposes of liquidated damages, "the value of the property" is determined by R.C. 2307.61(H)(2). Value assigned to property loss or diminished value means:

> (a) The retail value of any property that is offered for sale by a mercantile establishment,* * * * .
>
> (b) The face value of any check or other negotiable instrument that is dishonored due to insufficient funds in the drawer's account * * * * .
>
> (c) The replacement value of any property not described in division (H)(1) or (2) of this section.

Thomas never asked the jury to consider "the value of the property" for purposes of pursuing liquidated damages. Thomas only asked for compensatory and punitive damages. Therefore, Thomas never elected liquidated damages instead of compensatory damages as he now claims.[1]

{¶ 55} Inadvertently, the majority opinion ignores the jury's finding that there were no compensatory or punitive damages to be awarded Thomas. Simultaneously, the majority supplements the record with its judgment as to the "value of the property" pursuant to R.C. 2307.61(H)(2) as $50,000. In turn, this makes the exemplary damages a windfall award of $150,000. R.C. 2307.61(H)(2) considers the value of property relative to the injury incurred by the plaintiff.

{¶ 56} I call this result a "windfall" because the record contains testimony that the $45,000 Carol initially had transferred from the Vanguard account (after $5,000 was withheld for the IRS) was repaid to the account. Since Carol did not retain dominion and control over the money transferred, the jury determined Thomas suffered no injury. The notion Thomas was entitled to liquidated damages after seeking compensatory damages was unsupported by the record and is clearly not supported by a plain, ordinary reading of the statutes involved.[2]

{¶ 57} While acknowledging the jury awarded no damages to Thomas (either compensatory or punitive), my colleagues suggest there was a dispute as to whether

---

1. The record suggests that the jury instructions were drafted by Thomas' counsel. Regardless, Thomas never asked for a jury instruction which indicated he was electing liquidated damages or that the jury determine the value of the property as defined in the liquidated damages portion of R.C. 2307.61(H)(2).

2. The record lacks clarity as to whether the $5,000 that Vanguard withheld as payment to the IRS was recouped. However, Thomas had the burden of proof, and the jury did not award Thomas a loss of $5,000, $45,000, or even the $50,000 my colleagues now triple. Concluding Thomas had $50,000 in damages ignores the jury's verdict stating there were no damages. Mathematics is an area of study that involves absolutes: 3 X 0 = 0.

Carol repaid the money. However, the record reveals the money was reimbursed to Vanguard from Carol's attorney's trust account. Additionally, in denying the motion for JNOV, the trial court specifically referred to testimony that reasonably supported the jury's finding that the value of damages was zero. The trial court also determined there was no clear election for liquidated treble damages.[3] Nothing in the record suggests an unequivocal election of liquidated damages prior to the issue of damages going to the jury. Therefore, the trial court did not err.

{¶ 58} The opportunity for an election between compensatory *or* liquidated damages as found in R.C. 2307.61(A) can only come to fruition pursuant to R.C. 2307.60(A) which clearly requires a plaintiff to incur injury to their property. "The decision to create a civil cause of action for any person *injured* by a criminal act has been definitely made by the General Assembly." *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, ¶ 12 (emphasis added). The statutory framework permitting recovery of damages requires "injury." It is indisputable that when the jury found the damages were "0" it was because there was no injury.

{¶ 59} The jury heard the evidence and determined there was no diminution or loss in value to be replaced. This is because the transfer of funds out of an account she was named on were transferred back into the account. The timing of what would have otherwise been an acceptable transfer, was ill-advised as it was subsequent to her husband's death. Competent, credible evidence supported the jury's determination not to award Thomas damages and should not be disturbed on appeal. *See Silver v. Jewish*

---

3. The prayer in the complaint failed to reference liquidated or treble damages or an amount of $150,000. Monetary judgments are best expressed in the prayer for relief in a definite amount and then only awarded when warranted by proof. *Gauthier v. Gauthier*, 12th Dist. Warren No. CA2018-09-098, 2019-Ohio-4208, ¶ 53. "[T]he property owner may elect to recover money as described in division (A)(1)(a) *or* (b) * * *" R.C. 2307.61 (emphasis added). While the statute does not indicate when the election is to be made, obviously it must be before the issue is submitted to the finder of fact⸺in this case, a jury.

*Home of Cincinnati*, 190 Ohio App.3d 549, 2010-Ohio-5314, ¶ 31 (12th Dist.). It is axiomatic that in a tort action if there is no injury there are no damages to be awarded. *See Fabec v. Frederick & Berler, LLC*, 8th Dist. Cuyahoga No. 110562, 2022-Ohio-376.

**{¶ 60}** A person injured in their property pursuant to R.C. 2307.60 would have to have a value determined pursuant to R.C. 2307.61(H)(2). Only then could the injured party be awarded treble damages. R.C. 2307.61 (A)(1)(b)(ii). The request for treble damages came *after* the trial and discharge of the jury. Thomas' counsel agreed that compensatory and punitive damages would be determined by the jury. As the majority properly notes, "it was agreed that the issue of treble damages did not need to be presented to or discussed with the jury." Thomas may have believed if he failed at proving compensatory damages he could later elect to receive liquidated, treble damages after the trial. However, the compensatory damages came back "0" and there was nothing to triple.

**{¶ 61}** However, despite Thomas now saying he didn't want compensatory damages and that he unequivocally elected only liquidated damages, three facts remain clear (1) there was no objection to the instructions or a request for a determination as to damages other than for compensatory and punitive damages, (2) the jury answered interrogatories which indicated no award of damages given to Thomas, and (3) a party claiming to be injured pursuant to R.C. 2307.60 cannot ask for both compensatory and liquidated damages.

**{¶ 62}** Unless a party specifically states the grounds for an objection, an argument the jury should have been instructed differently is forfeited. Civ.R. 51(A). Here, there is no assignment of error that the jury should have been instructed differently. Thomas never asked for a valuation of injured or diminished property in pursuit of liquidated damages as defined in R.C. 2307.61(H)(2). Instead, Thomas invited us to replace the

finder of fact's determination that there were no damages.  We are asked to find, for the first time upon appeal, that "the value of the property" pursuant to the definitions in R.C. 2307.61(H)(2) is $50,000.  Thomas asks my colleagues to make this finding because the jury never made such a finding pursuant to R.C. 2307.61(H)(2) regarding the "value of the property" nor did they find injury to any property.

{¶ 63} When a person is injured "in property," the "value of the property" pursuant to R.C. 2307.61(H)(2) anticipates missing, destroyed, or damaged tangible property.  A jury would be unlikely to find that money transferred from one account to another and then transferred back meets any of the definitions found in R.C. 2307.61(H)(2).  The "value of the property" as discussed therein involves (1) the retail value of property offered for sale by a mercantile establishment, (2) the face value of a negotiable instrument not honored, and (3) the replacement of the value lost.  None of these definitions fit the factual scenario in this case.  Regardless, it would be for a jury to determine.  Thomas strategically chose to pursue compensatory and punitive damages because the circumstances indicated it was his best option in seeking a monetary judgment.  The jury just didn't agree that his property was injured or that he had a compensable loss; this explains why the jury came back with a damages award of "0."

{¶ 64} Thomas was aware that the jury was being instructed on compensatory and punitive damages rather than liquidated damages.  The majority opinion determines it was agreed that the issue of treble damages would not be presented to the jury.  This supports the trial court's determination that Thomas never unequivocally elected treble damages pursuant to (A)(1)(b) over compensatory and punitive damages pursuant to (A)(1)(a).  While it is accurate treble damages were pled in the alternative, that, in-and-of itself, is not an election.  Treble damages were discussed, but no discussion reveals a clear election only for treble damages *instead of* compensatory and punitive damages.

{¶ 65} The statute is clear the reason an election must be made is because a party cannot seek both. The trial court in denying the JNOV correctly notes the complaint's prayer for relief fails to designate liquidated damages as the relief elected. Furthermore, the proposed interrogatory asking the jury for compensatory damages also supports the trial court's determination that treble damages were not elected instead of compensatory damages.

{¶ 66} Thomas claims liquidated damages were the only intended relief he elected to seek, yet such damages would only be appropriate pursuant to R.C. 2307.61(A)(1)(b)(ii). If we ignore the jury's determination that the value of damages was zero, the record still will not support an award of treble damages pursuant to subsection (A)(1)(b)(ii). A reasonable reading of subsection (A)(1)(b)(ii) indicates only tangible property that is destroyed, damaged, modified, altered or otherwise resalable at its full market price is contemplated by statute. However, the need to analyze the meaning of these statutory provisions is unnecessary because a jury instruction pertaining to liquidated damages was never requested for submission to the jury. Instead, an instruction for compensatory damages was requested with a specific interrogatory as to damages was given to the jury. There simply was no property "damaged," nothing was done "willfully," and there was no injury subject to a theft.[4]

{¶ 67} Had Thomas truly elected liquidated damages pursuant to R.C. 2307.61(A)(1)(b), other aspects of R.C. 2307.61 would have fallen into consideration. Carol's conduct and the act of repayment may have necessitated consideration of R.C. 2307.61(D). This subsection suggests if reimbursement was made or replaced, the

___

4. The jury expressly rejected awarding punitive damages even though instructed such an award would be "to discourage others from committing similar wrongful acts."

property owner shall not file a civil action seeking damages. At trial Carol was the prevailing party. Even though she did something wrong, there was no harm. Thus, there is no foul. Obviously, the jury determined that Carol's conduct was a misstep but that her correction with repayment resulted in no injury or damages. Therefore, the purpose of liquidated damages as an exemplary award was unsupported. This remains the case on appeal.[5]

{¶ 68} To recover treble damages, the plaintiff must successfully prosecute their claim. *Dancybey v. Dancy-Dunlap*, Cuyahoga No. 111089, 8th Dist., 2022-Ohio-2774 ¶ 11. This means the plaintiff must establish injury of some sort. "Upon proof of the fact that [the plaintiff] has been *damaged* through a criminal act * * * he becomes entitled to the remedy chosen." *Id.* (emphasis added). The election for treble damages is only an option when a plaintiff has damage from a criminal act. *Id.,* citing R.C. 2307.60(A)(1). Apparently, Thomas knew his better strategy at benefiting from Carol's misstep was compensatory and punitive damages. Unfortunately for Thomas, the jury said zero for both.

{¶ 69} My friends in the majority unnecessarily find that to some extent our precedent of *Justice v. Justice*, 12th Dist. Butler No. CA2004-03-0744, CA2004-04-084, 2005-Ohio-1802, must be overruled. Upon appeal Thomas convinced my colleagues that *Justice* was decided wrongly because it didn't acknowledge the statute pertaining to liquidated damages was amended in 1992. However, the version of the statute before the 1992 amendment was not relied upon and the 1992 amendment was inconsequential to the outcome in *Justice.*

---

5. If Thomas had clearly elected "the value of the property" be determined by subsection (H)(2) in pursuit of liquidated damages and asked for a jury instruction accordingly, Carol would have in all likelihood requested a jury instruction in line with R.C. 2907.61(D).

**{¶ 70}** *Justice* was a *summary judgment proceeding* involving a joint bank account of divorcing parties, Robert and Kimberly. Robert did not allege or establish a civil theft. The trial court did order Kimberly to return the $6,879.96 even though it was legally withdrawn from the joint account because it was rightfully an asset of the divorce. Robert could not establish in the summary judgment proceedings as a matter of law that Kimberly wrongfully exercised dominion and control over the property of another. We determined that the trial did not abuse its discretion in declining to award treble damages in the summary judgment. *Id.* ¶19. Neither the trial court's decision nor ours was incorrect.

**{¶ 71}** While our analysis in *Justice* may have been too general in nature and contained unnecessary dicta involving statutory interpretation, *Justice* has every limited application and basically stands for the proposition that just because someone insists they are entitled treble damages does not mean they are.[6]

**Conclusion**

**{¶ 72}** The majority opinion finds the issue of compensatory damages did not need to be submitted to the jury. Yet the fact that it was submitted, without objection, supports the trial court's finding that Thomas had not elected liquidated damages. No interrogatories were proposed to identify the value of the injury as referenced in R.C. 2307.60(A). The jury did not determine the "value of the property" pursuant to R.C. 2307.61(H)(2) was $50,000. Circumstantially, the record establishes Thomas' reasoning for seeking only compensatory and punitive damages was logical and reasonable. My colleagues conclude that $50,000 was "stolen." However, such a finding is inconsistent with the jury's determination that the damages were "0."

---

6. Thomas' interjection of *Justice* is an example of the proverbial "red herring." The expression "that's a red herring" comes from early English elite who would gallop about following their hounds hunting fox for fun. Those that objected to such sport would, prior to the hunt, obtain smoked herring, red in color, and drag it through the fields and forest, creating scented trails to confuse the hounds.

**{¶ 73}** This appeal was advanced with no less confusion than when the trial was prosecuted. The entanglement of various concepts and definitions makes it easy to lose one's way in search for clarity. However, several things are clear: (1) the framework of R.C. 2307.60 in conjunction with R.C.2307.61 requires an injury occurring from a wrong, and while there was a wrong (similar to *Justice*) there was no injury; (2) Thomas never chose liquidated damages instead of compensatory damages; (3) if Thomas was seeking treble damages, 3 x 0 always equals 0; and (4) second bites of the apple are frowned upon (which is what Thomas has asked of our appellate review).

**{¶ 74}** Out of respect for the sanctity of a jury's decision and because there was no injury or damages, I dissent from the opinion of my colleagues and find contrarily the trial court did not err in finding Thomas failed to clearly elect liquidated damages instead of compensatory damages and did not err in failing to override the jury's determination and award Thomas a windfall of $150,000. The fourth assignment of error contains no merit and should be overruled as well as the first three assignments of error.