[Cite as *Batsche v. Batsche*, 2025-Ohio-3017.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


|  |  |  |
|---|---|---|
| THOMAS BATSCHE, SR., et al., | : | CASE NO. CA2024-12-097 |
| Appellees, | : | |
| | : | <u>OPINION AND</u><br><u>JUDGMENT ENTRY</u><br>8/25/2025 |
| - vs - | : | |
| | : | |
| CAROL VOGELE EGNOR BATSCHE, | : | |
| Appellant. | : | |


CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 21 CV 327


Dinsmore & Shohl, LLP, and Sarah B. Cameron, for appellees.

Becker & Cade, and Dennis A. Becker, for appellant.


## O P I N I O N


**SIEBERT, J.**

{¶ 1} Defendant Carol Vogele Egnor Batsche appeals the decision and judgment entry of the Clermont County Court of Common Pleas, Probate Division, in favor of

Plaintiffs Thomas and Jesse Batsche for $150,000.[1]

{¶ 2} In her single assignment of error, Carol asserts the trial court erred in awarding "treble" damages to Thomas after the jury concluded Carol committed civil theft against Thomas but also concluded there were no damages stemming from that theft. We overrule this assignment of error because Ohio law required the court to award Thomas $150,000 in *liquidated* damages after the jury found Carol guilty of civil theft.

**Background**

{¶ 3} During their marriage, Ronald possessed money management accounts that listed Thomas as the beneficiary upon Ronald's death. Ronald passed away on December 3, 2020. Thomas filed suit against Carol and alleged, among other claims, that Carol committed civil theft by initiating two withdrawals after Ronald's death from the accounts that listed Thomas as the beneficiary. The case proceeded to trial, and the jury instruction on civil theft stated, in relevant part:

> Before you can find for Thomas . . . [for civil theft], you must find by the preponderance of the evidence after Ronald's death:
>
> (A) Carol . . . deprived Thomas . . . of property, and knowingly obtained or exerted control over the property in any of the following ways:
>
>   i. Without the consent of Thomas . . .
>   ii. Beyond the scope of the express or implied consent of Thomas . . .
>   iii. By deception;
>   iv. By threat;
>   v. By intimidation
>
> Sources: Ohio Rev. Code 2307.60 and 2307.61; Ohio Rev. Code 2913.02(A).[2]

---

1. Jesse Batsche is the next of kin of the estate of Kimberly Batsche, an original plaintiff to this action. Thomas and Kimberly Batsche are biological children of Ronald Batsche. For readability purposes, Thomas and Jesse Batsche will be referred to solely as "Thomas." Carol Batsche, stepmother of Thomas, will be referred to as "Carol."

2. These statutes and their significance to this case will be discussed further below.

{¶ 4}   The jury found Carol "commit[ed] a theft offense" by taking $50,000 from an account that listed Thomas as a beneficiary. Despite this, the jury awarded no damages to Thomas. While not an issue on appeal, a point of dispute in these proceedings is whether Carol returned the withdrawal to Thomas. We note, without deciding, this disputed return could have led to the jury's determination that Thomas was not damaged by the civil theft.

{¶ 5}   Thomas appealed. In this first appeal, we held that as to his civil theft claim, Thomas "elected to pursue treble damages under R.C. 2307.61, [and] he is entitled to receive those damages." *Batsche v. Batsche*, 2024-Ohio-1234, ¶ 51 (12th Dist.) ("*Batsche I*"). Upon remand, the probate court entered judgment in favor of Thomas for $150,000.

{¶ 6}   Carol timely appealed the latest judgment of the trial court. Carol argues that the language of the Authorizing Statute "unequivocally" required Thomas to prove he was injured *and* that he was awarded damages before "treble damages" can be awarded under the Damages Statute. To conclude otherwise, Carol asserts, "would grant Thomas . . . a windfall." A careful review of the relevant statutes demonstrates this is not so.

## Law and Analysis

### *Standard of Review and Applicable Law*

{¶ 7}   "Questions of law, including statutory construction, are reviewed de novo." *Id.* at ¶ 41. Two statutes are at issue here; the first authorizes a civil action to recover damages caused by criminal acts, and the second sets forth under what circumstances a plaintiff may recover and how those damages are calculated.

{¶ 8}   Under Ohio law, anyone "injured in person or property by a criminal act has, and may recover full damages in," a civil action against the person who committed the

- 3 -

criminal act. R.C. 2307.60(A)(1) (the "Authorizing Statute"). The Authorizing Statute creates a civil cause of action for someone injured by a crime. *See Jacobsen v Kaforey*, 2016-Ohio-8434, ¶ 10.

{¶ 9} If someone brings a suit under the Authorizing Statute, R.C. 2307.61 specifies under what circumstances a plaintiff may recover and how those damages are calculated (the "Damages Statute"). The Damages Statute allows a property owner "to recover damages from any person who . . . commits a theft offense . . ." *Id.* at (A). The Damages Statute's definition of "theft offense" is expansive and includes that found in R.C. 2913.02(A)[3] ("Theft Statute"): "No person, with purpose to deprive the owner of property . . . shall knowingly obtain or exert control over . . . the property . . . [w]ithout the consent of the owner or person authorized to give consent . . ." *See* R.C. 2307.61(A) and 2913.01(K)(1).[4]

{¶ 10} There are two types of "recovery" a property owner may elect under the Damages Statute: (1) Compensatory damages including, but not limited to "the value of the property and liquidated damages [up to $150]; or (2) Liquidated damages "three times the value of the property at the time it was . . . the subject of a theft offense, irrespective of whether the property is recovered by way of replevin or otherwise." A careful review of this statutory framework supports the trial court's award of $150,000 to Thomas.

*Statutory Interpretation*

{¶ 11} When the statutory language is unambiguous and its meaning is clear, we must rely on the words of the statute the General Assembly wrote. *State v. Logan*, 2025-

---

3. The Damages Statute defines a "theft offense" as any offense defined as such in R.C. 2913.01. In turn, R.C. 2913.01(K)(1) defines a violation R.C. 2913.02 as a "theft offense."

4. R.C. 2913.02(A) lists other ways one can improperly exert control over property that are not relevant to this case: "[1] Beyond the express or implied consent of the owner or person authorized to give consent; [2] By deception; [3] By threat; [4] By intimidation."

Ohio-1772, ¶ 8. "The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Id.*, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus.

{¶ 12} Statutes relating to the same subject matter should be "construed harmoniously," if possible. *Snodgrass v. Harris*, 2024-Ohio-3130, ¶ 17, citing Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 252-255 (2012). The Authorizing and Damages Statutes relate directly to the same subject matter. Further, as applicable here, the Damages Statute's cross references include the Theft Statute. These three statutes must therefore be considered together and construed harmoniously.

*Authorizing Statute*

{¶ 13} Carol argues the Authorizing Statute equates "injury" to "damages" and requires someone must sustain "damages" in order to recover under the Damages Statute. She argues because the jury found Thomas sustained no damages, he was not injured and cannot meet this threshold requirement of the Authorizing Statute. Carol's argument lacks legal merit.

{¶ 14} The Authorizing Statute grants anyone "injured" in person or property the ability to recover "damages" in a civil action. The statutes do not define these terms, but because the General Assembly used two distinct terms in the Authorizing Statute, "injured" and "damages," they must therefore mean different things. "Generally, we read undefined terms as having their plain and ordinary meaning." *Vossman v. AirNet Sys., Inc.*, 2020-Ohio-872, ¶ 14, citing *Great Lakes Bar Control, Inc. v. Testa*, 2018-Ohio-5207, ¶ 8. However, "[i]f words have acquired a particular meaning . . . we construe them accordingly." *Id.*, citing R.C. 1.42. That is the case here, as both "injury" and "damages" have acquired particular meanings.

{¶ 15} As a legal term of art, "injury" is defined as, "[t]he violation of another's legal

right, for which the law provides a remedy; a wrong or injustice." INJURY, *Black's Law Dictionary* (12th ed. 2024) (distinguishing *harm* from *injury*, stating that *harm* denotes personal loss or detriment, while *injury* involves an actionable invasion of a legally protected interest). "Damages," however, is defined as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." DAMAGES, *Black's Law Dictionary* (12th ed. 2024).

{¶ 16} An injury is therefore *what* happened when one individual violates another's legal right (e.g., she broke his leg). Damages, meanwhile, are the *amount of money* one is entitled to receive for the violation of a legal right (e.g. she owes him $5,000 for the medical bills related to his broken leg).

{¶ 17} The plain language of the Theft Statute and the Damages Statute also support this legal distinction between "injury" and "damages."

*Theft Statute*

{¶ 18} As relevant here, a person is guilty under the Theft Statute if she "knowingly obtain[s] or exert[s] control over . . . the property . . . [w]ithout the consent of the owner or person authorized to give consent." R.C. 2913.02(A)(1), (B)(1). The Theft Statute does not include any language relieving the offender of their guilt of theft if the property is returned to the owner or if the property is not harmed. *See generally, id.* This language shows two things: (1) the owner's legal right includes merely exerting control over the property at issue; and (2) theft occurs when someone exerts unauthorized control over that same property. The person exerting unauthorized control does not have to harm the property to violate that legal right (i.e. cause "injury").

*Damages Statute*

{¶ 19} Under the Damages Statute, if a property owner brings suit for an "injury" referenced in the Authorizing Statute, he can recover "damages" from any person (1) who

willfully damages the owner's property, *or* (2) who *commits* a theft offense. R.C. 2307.61(A). The first type of "injury" under the Authorizing Statute contemplated under the Damages Statute is an injury that results from "willful damage." But the plain language of the second part of this statute makes one liable for damages for merely *committing* a theft offense—no damage to the property is required by this language or by the language in the Theft Statute.

{¶ 20} The "injury" required in the Authorizing Statute is a legal term of art best understood here as a violation of another's legal right and "damages" is a legal term of art best understood here as the amount of money someone owes for violating that legal right.

{¶ 21} Carol argues that $150,000 in "treble" damages was inappropriate under the Damages Statute because the jury's verdict made no finding of an underlying injury. Not so. Thomas did not seek recovery from Carol for "willful damage" to his property. Instead, Thomas sought recovery from Carol for the "injury" to his legal right to retain control over the account when she committed theft. After being specifically instructed on the definition of theft under the Theft Statute, the jury concluded that Carol "commit[ed] a theft offense by taking $50,000" from the money management account that listed Thomas as a beneficiary. Because Carol committed theft against Thomas, she owes "damages" to him, as calculated by the Damages Statute.

{¶ 22} But the statutory interpretation does not end there—the Damages Statute provides two distinct paths to calculate the amount of money owed by someone who committed a theft of another's property under the Theft Statute.

*Damages Calculation*

{¶ 23} The Damages Statute provides that a property owner may elect to recover compensatory damages or liquidated damages. R.C. 2307.61(A)(1)(a),(b).

Compensatory damages are calculated based on the actual damages someone suffers (e.g., the medical bills sustained for a broken leg). Liquidated damages do not consider if actual damages exist at all. As this court held in *Batsche I*, Thomas elected to recover liquidated damages. *Batsche I*, 2024-Ohio-1234, at ¶ 51.

{¶ 24} But before analyzing how liquidated damages are calculated under the Damages Statute, the distinction between "treble damages" and "liquidated damages" must be discussed. The parties (and this court) have previously used these terms interchangeably.[5] But treble and liquidated damages mean completely different things—using them imprecisely or without understanding the difference leads to the very kind of misinterpretation and argument present in this appeal.

{¶ 25} Treble damages are "[d]amages that, by statute, are three times the amount of *actual damages* that the factfinder determines is owed." (Emphasis added.) DAMAGES, *Black's Law Dictionary* (12th ed. 2024).

{¶ 26} Liquidated damages, however, are "[a]n amount contractually [or statutorily] stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches . . . [regardless of] whether it exceeds or falls short of the actual damages." *Id.* Stated differently, liquidated damages provide a clear monetary value to compensate an injured party without the need to determine actual damages. *Boone Coleman Constr., Inc. v. Piketon*, 2016-Ohio-628, ¶ 12.

{¶ 27} The difference between "treble damages" and "liquidated damages" is dispositive to this appeal. To calculate treble damages, the finder of fact must first determine if actual (or compensatory) damages exist. Carol argues that because the jury

---

5. In fact, Carol used the correct term of "liquidated damages" only once in this appeal—when she used both terms in the same sentence stating Thomas sought "to recover treble damages under R.C. 2307.61(A)(1)(b)(ii) liquidated damages." Thomas also refers to both treble and liquidated damages here. The calculation of *liquidated* damages is the sole issue before this court.

awarded Thomas $0 in damages, he was not entitled to treble damages. That would be true if the Damages Statute provided for *treble* damages because $0 x 3 = $0.

{¶ 28} But the Damages Statute does not provide for "treble damages." It provides for "liquidated damages" of three times the value of the property at issue. Not only that, but it does so "irrespective of whether the property is recovered." It would make no sense for the Damages Statute to provide for liquidated damages "irrespective" of recovery of the stolen property while also requiring a separate finding of actual damages. "'[T]he General Assembly is not presumed to do a vain or useless thing, and . . . when language is inserted in a statute it is inserted to accomplish some definite purpose.'" *State v. Wilson,* 77 Ohio St.3d 334, 336 (1997), quoting *State ex rel. Cleveland Elec. Illum. Co. v. Euclid,* 169 Ohio St. 476, 479, (1959).

{¶ 29} Therefore, after the jury found Carol guilty of civil theft, and the value of the property at issue was established at $50,000, Thomas was entitled to $150,000 ($50,000 x 3 = $150,000) regardless of whether the original $50,000 was returned. As we held in *Batsche I,* "the question of compensatory damages as to the civil theft claim did not need to be submitted to the jury at trial." *Batsche I,* 2024-Ohio-1234, at ¶ 48.

{¶ 30} The Damages Statute is unequivocal that a property owner (Thomas) may "recover damages from any person who . . . commits a theft offense" (Carol) in the fashion that the property owner elected to recover (liquidated damages at three times the value of the property). The statute requires proof of nothing else. *Dancybey v. Dancy-Dunlap,* 2022-Ohio-2774, ¶ 13 (8th Dist.).

{¶ 31} The jury's determination of $0 in damages has no impact on our conclusion that Thomas suffered an "injury" under the Authorizing Statute when Carol exerted control over the account without authorization. Since this meant Carol committed a civil theft, Thomas was entitled to recover liquidated damages, as calculated by the Damages

Statute. For the same reasons, we disagree with Carol's assertion that this outcome is an impermissible windfall for Thomas because the Damages Statute expressly allows, and in fact, specifies, a "windfall" be paid if the plaintiff elects to recover liquidated damages.

## Conclusion

{¶ 32} The Authorizing and Damages statutes did not require Thomas to prove actual damages in order to recover from Carol. Upon succeeding on his civil theft claim at trial, Thomas was entitled to elect to recover liquidated damages calculated as "three times the value of the property at the time it was . . . the subject of a theft offense, irrespective of whether the property [was] recovered." That calculation equals $150,000, which is precisely what the trial court correctly awarded.

{¶ 33} We overrule Carol's single assignment of error.

{¶ 34} Judgment affirmed.


HENDRICKSON, P.J., concurs.

PIPER, J., dissents.


**PIPER, J., dissenting.**

{¶ 35} The entanglement of various legal concepts and definitions makes it easy to lose one's way in the search for clarity. The majority has inadvertently lost its way. Rather than finding the obvious answer (an answer that respects the sanctity of the jury's decision), the majority misguidedly jumps through one legal hoop after the other to reach a decision that awards Thomas a windfall of $150,000.[6]

---

6. In *Batsche v. Batsche,* 12th Dist., 2024-Ohio-1234, I referenced the result as a "windfall" because the record contains testimony that the $45,000 Carol initially had transferred out of the Vanguard account (after $5,000 was withheld for the IRS) was repaid to that same Vanguard account via her attorney's trust account. As a side note, the evidence was unclear as to whether the $5,000 was reimbursed, but regardless the jury determined the damages were zero.

**{¶ 36}** The majority's efforts are reminiscent of a hound hunting for a fox only to be deceived by the scent of red herring. Just because someone insists that they were injured does not make it the right trail to follow.[7] The jury's decision clearly refuted Thomas' claim of injury and his entitlement to damages.

**{¶ 37}** If there is no injury, then there are no damages to be awarded. If there are no damages to be awarded, then there was no resulting injury. Therefore, and with respect to my colleagues in the majority, I must dissent. While the trial court got it right initially, our unfortunate remand invited the trial court to err. Awarding uninjured Thomas with damages in an amount other than what the jury determined was misguided.

**{¶ 38}** The majority herein summarily concludes that Thomas had elected to recover liquidated damages in this case because of our previous decision in *Batsche v. Batsche,* 2024-Ohio-1234 (12th Dist.) (hereinafter *Batsche I)*. My colleagues conflate the factual analysis in *Batsche I* to a rule of law as if it were a legal holding simply because it was incorporated in its conclusion. In fact, in *Batsche I* the majority therein found treble damages were not in Thomas' prayer for relief. That majority premised its analysis on its own factual findings, i.e. that $50,000 was "stolen" and that Thomas elected to receive treble damages rather than compensatory and punitive damages. These factual findings resulted in a defective analysis and were inconsistent with the majority's conclusion.[8]

**{¶ 39}** Consistent with treble damages not being included in Thomas' prayer for

---

7. As I noted in my dissent to *Batsche I*, the expression "that's a red herring" comes from early English elite who would gallop about following their hounds hunting fox for fun. Those that objected to such sport would, prior to the hunt, obtain smoked herring, red in color, and drag it through the fields and forest, creating scented trails to confuse the hounds.

8. *Batsche I* concluded "This case, at all stages of the proceedings, was undoubtedly complicated by Thomas' repeated demands for judgment under various legal theories which, if granted, entitled him to different types and amounts of damages. We find no issue with how the trial or jury applied or resolved the factual issues in this case." *Batsche I* at ¶ 51. The conclusion in *Batsche I* then continues with an application of factual determinations inconsistent with the trial and jury.

relief was the record which clearly demonstrated that Thomas only asked the jury to award him with compensatory and punitive damages.[9] This holds true despite Thomas now claiming that he was not seeking an award of compensatory and punitive damages at trial, but rather that he unequivocally elected to receive an award of liquidated damages. In placing a value of zero on Thomas' claim of injury, the jury determined that the transferring of money out of the account and then back into the account was an offense of no injury or value.

{¶ 40} Furthermore, the record undeniably demonstrates that Thomas never elected to receive liquidated damages; the record firmly establishes that Thomas (1) did not object to the instructions the trial court provided to the jury; (2) did not make a request for a determination as to damages other than for compensatory and punitive damages; and (3) never objected to, or requested clarification of, the jury's answered interrogatory which indicated no award of damages would be given to Thomas. The law does not permit a party claiming to be injured (pursuant to R.C. 2307.60) to ask for *both* compensatory *and* liquidated damages (much less ask for liquidated damages *after* failing to receive an award of compensatory and punitive damages.)

{¶ 41} The opportunity for an election between compensatory or liquidated damages can only come to fruition under R.C. 2307.60(A). That statute specifically requires a plaintiff to sustain an *injury* to either their person or property *before* they may recover *damages* in a civil action. R.C. 2307.60(A)(1). Without injuries there were no damages; without damages there were no injuries. "The decision to create a civil cause of action for any person *injured* by a criminal act has been definitely made by the General

---

9. The majority also claims that there is a "point of dispute" as to whether Carol repaid the money that she had ill-advisedly transferred out. This is also incorrect for the record plainly reveals that the money Carol withdrew was subsequently transferred back into that same account from which it was withdrawn. *See* fn. 6 above.

Assembly." (Emphasis added.) *Jacobson v. Kaforey*, 2016-Ohio-8434, ¶ 12. However, it is only "[u]pon proof of the fact that [the plaintiff] has been *damaged* through a criminal act [that the plaintiff] becomes entitled to the remedy chosen." (Emphasis added.) *Dancybey v. Dancy-Dunlap*, 2022-Ohio-2774, ¶ 11 (8th Dist.).

{¶ 42} Therefore, given the plain language set forth in R.C. 2307.60(A)(1), a plaintiff is entitled to *damages* only when they sustained an *injury*. A plaintiff is *injured* only when they sustain *damages*. When the jury determined that Thomas sustained no *damages* (either compensatory or punitive) this by necessity determined that Thomas did not incur any resulting *injury*. A judicially imposed windfall of $150,000 must not be upheld by this court. A decision holding otherwise defies logic as well as the plain and ordinary language of the controlling statutes.

{¶ 43} Pursuant to R.C. 2307.60(A)(1) a plaintiff who sustains an "injury" to their property is entitled to have a "value" placed on that injury in accordance with R.C. 2307.61(H)(2). It is only after that "value" has been determined that a plaintiff can be awarded treble damages. R.C. 2307.61(A)(1)(b)(ii). However, as defined by R.C. 2307.61(H)(2), the "value" to be placed on that "injury" must be one of the following: (1) the retail value of property offered for sale by a mercantile establishment; (2) the face value of a negotiable instrument not honored; or (3) the replacement of the value of the property that was lost. Thus, given the plain language set forth in R.C. 2307.61(H)(2), such "value" anticipates that the injured property was missing, destroyed, altered, modified, or in some way damaged, thereby resulting in a diminution to the property's overall "value" to the plaintiff. The jury in this case clearly determined that money being transferred out of an account and back again does not meet any of the three definitions of "value" lost or diminished as set forth in R.C. 2307.61(H)(2). This is because there was no diminution or loss in "value" to Thomas' property that required compensation as a

remedy, i.e., there was no *injury* for which *damages* should have been awarded to Thomas under R.C. 2307.60(A)(1).

{¶ 44} The record plainly establishes that Thomas knew that the jury was being instructed on compensatory and punitive damages rather than on liquidated damages. The record also plainly establishes that Thomas never asked for a valuation of injured or diminished property in pursuit of liquidated damages as defined in R.C. 2307.61(H)(2). Thomas instead strategically chose to pursue compensatory and punitive damages over liquidated damages in this case.[10] This is because, as the record indicates, it was Thomas' best option in pursuit of monetary gain to obtain a judgment for compensatory and punitive damages against Carol. But, unfortunately for Thomas, the jury did not agree with this argument. That is to say, the jury did not agree with Thomas' claim that his property sustained an *injury* that had compensable "value." There was no damage to Thomas or his property simply by money being transferred out, and back in, an account. The jury's original determination was not error.

{¶ 45} The only logical explanation for the jury's verdict is that the "injury" to Thomas' property was non-existent and entitled him to zero in "damages" under R.C. 2307.60(A)(1). For the majority to now uphold a trial court's judgment determining otherwise is a clear misapplication of the law (even if misguided by our confusing remand).

{¶ 46} Obviously, the jury determined that Carol's conduct was a misstep. But the

10. There can be no dispute that Thomas pled treble damages *in the alternative*. However, that, in and of itself, is not a clear and unequivocal election of treble damages to the exclusion of compensatory and punitive damages. There can also be no dispute that treble damages were discussed at trial. But, despite a full and thorough review of the record, none of those discussions revealed any instance in which Thomas made a clear and unequivocal election of treble damages as opposed to compensatory and punitive damages. That the majority has concluded otherwise is not supported by the record and is instead this court sidestepping our role as a reviewing court and usurping the power that belongs to the jury as the ultimate fact finder.

jury assigned no value to the misstep; the record firmly establishes that she corrected her misstep with repayment. This resulted in the jury awarding zero damages to Thomas. This award obligated Carol to pay nothing to Thomas for her wrongdoing.

{¶ 47} Although Carol may have been ill-advised by her husband, the decedent, to transfer money out of the Vanguard account to cover expenses after his death, the money was subsequently transferred back into that same account via her attorney's trust account. The fact that Carol did not retain dominion and control over the money transferred resulted in the jury finding Thomas suffered no "injury" to his property which would entitle him to recover "damages" under R.C. 2307.60(A)(1). Even though Carol had done something ill-advisedly—the post-death transfer—the renounced dominion and control resulted in no injury or harm. Without harm, there can be no foul.[11] The majority concluding that Thomas had been injured to the value of $50,000 in damages (and then tripled) ignores the jury's determination that Thomas' damages were, in fact, zero.

{¶ 48} What is more, mathematics is an area of study that involves absolutes. Treble damages of zero is not $150,000. It is zero. The trial court interpreted our confusing remand as a mandate from this court to value Thomas's injury at $50,000 and then triple that amount. The trial court erred in imputing an injury and then assigning a value to the injury of $50,000. The law is then distorted in application to allow a windfall of $150,000. Such an application of the statutory scheme surrounding R.C. 2307.60 and 2307.61 creates an absurdity and is unjust.

---

11. This case falls squarely within the "no harm, no foul" rule. The "no harm, no foul" rule "is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 (7th Cir.1997). Therefore, even though the jury determined that Carol had done wrong, the jury also determined that Thomas was not entitled to the recovery of any damages given the absence of proof that he suffered any loss in value. The jury reached this decision, as logic dictates, because Thomas had already been made whole by Carol's repayment upon discovering the transfer was inappropriate.

**{¶ 49}** The trial court did not err when it originally declined Thomas' invitation to override the jury's determination because any misconduct of Carol had a value of zero. However, it is error for the trial court to interpret our remand as requiring a judgment that provides Thomas a windfall of $150,000 when the jury found Thomas was not injured by Carol's wrongdoing. I urge the Ohio Supreme Court to review this matter. The misapplication of the statutory scheme surrounding the pursuit of liquidated damages leaves unanswered questions of public interest and the need for state-wide guidance. Ohio Const., article IV, § 2(B)(2)(e); Rule 5.02(A)(3). Accordingly, for these reasons, and with respect to my colleagues in the majority, I must dissent. The trial court erred by awarding the uninjured Thomas with damages in an amount of anything other than what the jury determined to be appropriate, in this case, zero.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas, Probate Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Melena S. Siebert, Judge

- 16 -